SMITH DETECTIVE AGENCY & NIGHTWATCH SERVICE, INC. d/b/a Smith Alarm Systems, Inc., Appellant,

v.

STANLEY SMITH SECURITY, INC., Appellee.

No. 05–95–01536–CV.

Court of Appeals of Texas, Dallas.

Dec. 20, 1996.

---

Jill Adler, Thomas, Sheehan & Culp, L.L.P., Dallas, for appellant.

Harry Skeins, Jr., Skeins & Williamson, P.C., San Antonio, for appellee.

Before THOMAS, C.J., and MORRIS and WOLFE, JJ.

## OPINION

MORRIS, Justice.

This appeal follows a trial that never happened. Shortly after the case was called to trial, the assigned visiting judge granted appellee Stanley Smith Security, Inc.'s motion for judgment on the pleadings because she concluded appellant Smith Alarm Systems, Inc.'s pleadings were defective. The trial judge granted the motion even though appellant three times requested leave to file a trial amendment to cure the alleged pleading defect. Having granted appellee judgment on the pleadings, the judge then declared the court did not have subject matter jurisdiction over appellant's counterclaim and dismissed it.

We conclude the trial court erred by refusing appellant's request to file a trial amendment, erred again by declaring the absence of subject matter jurisdiction over appellant's counterclaim, and erred yet again by dismissing appellant's counterclaim. Accordingly, we reverse the trial court's judgment granted to appellee and also reverse the order dismissing appellant's counterclaim. We remand the case to the trial court for further proceedings.

The nature of the parties' dispute is straightforward. In March 1990, appellant and appellee entered into a written agreement whereby appellee would provide patrol security services to appellant's customers. For its services, appellant was to pay appellee a fixed amount monthly. The agreement contemplated that if appellee's patrolmen failed to respond to a defined percentage of customers' alarms within a set amount of time, appellant could deduct from the monthly amount otherwise due appellee a fixed sum multiplied by the number of untimely responses.

A dispute arose about appellee's performance under the contract. In the summer of 1993, appellee filed suit against appellant in county court claiming amounts due by virtue of a sworn account. Appellant responded by generally denying appellee's claim and also by pleading under oath that "[Appellant] denies that the account made the basis of this suit is a sworn account." Appellant further pleaded failure of consideration as an affirmative defense. In addition to its defensive pleadings, appellant filed a counterclaim against appellee alleging an unspecified amount of damages.

Appellant amended its counterclaim three times. In its first amended counterclaim, appellant pleaded for "actual damages in an amount not to exceed the maximum jurisdictional limits of the court and not less than $103,642.40." In its third and last amended counterclaim, appellant pleaded for "actual damages in an amount not to exceed the maximum jurisdictional limits of the court and not less than $95,000." Appellant claimed in both its first and third amendments that the stated amount of damages consisted of "$9.09 times the number of late responses, damages to customers resulting from Stanley Smith's breach of the Agreement, and loss of Smith Alarm's customers as a result of Stanley Smith's conduct."

The parties thoroughly pursued discovery during the two years the case remained pending. On August 14, 1995, the parties were called to answer the jury docket. The statement of facts reflects the trial court first took up a preliminary motion, which the parties argued at length. At the end of argu-

ments on that motion, appellee's counsel asked the trial judge if the trial had begun, to which she responded, "Oh, yes, this trial has begun." At that point, appellee presented its "Motion for Judgment on the Pleadings," which appellee had filed that same day.

Summarized simply, appellee's motion for judgment pointed out that appellee had sued on a sworn account under rule 185 of the Texas Rules of Civil Procedure and claimed that appellant had not properly denied the account under the rule. In response, appellant argued that it had denied the existence of the sworn account and urged the court to recognize that the parties' dispute revolved around their written contract. When it became apparent that the trial court was not receptive to appellant's arguments, appellant orally requested permission to file a trial amendment to plead an outright verified denial of appellee's alleged account. Twice again appellant asked permission to file a trial amendment "to add a verified denial to [appellee's] sworn account claim." Later, appellant filed a written motion for leave along with the requested amendment. Appellee objected to the proposed trial amendment claiming surprise because appellant wanted to raise a "new defense." Appellee additionally claimed the amendment "on its face" created prejudice. Appellee conceded, however, that the witnesses necessary to prove its claim under the alleged account were present and available to testify. Other than arguing it was surprised and that the requested amendment was prejudicial "on its face," appellant offered no evidence of how it would otherwise be prejudiced. Ultimately, the trial court denied appellant's request to file a trial amendment, but only after expressly denying appellee's claim of surprise and ruling specifically that the amendment was "prejudicial." The trial court granted judgment to appellee for over $33,000 in actual damages because appellant "failed to deny the sworn account properly."

In addition to presenting its motion for judgment on its sworn account claim, appellee also asked the trial court to consider its separate "Motion for Judgment on the Pleadings as to Defendant's Counterclaim," likewise filed on the day of trial. Appellee's

argument in support of the motion was a legal one based on the trial court concluding appellee's sworn account was viable and granting judgment on it. The visiting judge, however, ventured along another path instead of ruling on appellee's motion.

After the visiting judge asked, "What is the counterclaim about?," appellee's counsel began explaining his legal argument in support of appellee's motion directed at appellant's counterclaim. Shortly thereafter, however, the judge asked, "What about this $103,000 claim which is in excess of the jurisdiction of a county court?" Counsel for appellant *and* appellee pointed out that appellant's claim as stated in its third amended counterclaim was for $95,000, not $103,000. Nonetheless, the judge focused on appellant's first amended counterclaim, which had alleged the amount of $103,642.40. Referring to the first amended counterclaim, the judge said, "I read that this morning, and I said that this is—looking at the pleading on its face, it is sufficient to say that this court does not have jurisdiction. The county court at law jurisdiction is $100,000...." Appellant's counsel again pointed out that appellant's damage claim was stated in its third amended counterclaim. Appellant also had previously pointed out that its counterclaim was for an unliquidated amount. The court responded: "So that is your third one? Well, then I've got a problem. If you first pled yourself outside of our jurisdictional limit, how in the world can you then jump back and plead yourself within it? I think once you were out of it, you were out of it for all purposes, counsel." And, indeed, appellant was "out of it" because the trial court ordered appellant's counterclaim dismissed for lack of jurisdiction. This appeal ensued with appellant asserting six points of error.

Because they are dispositive of the appeal, we need address only appellant's complaints as stated in its third and sixth points of error. In these two points of error, appellant respectively contends that the trial court erred in refusing to allow it to file a trial amendment and in dismissing its counterclaim for lack of subject matter jurisdiction. We take up the issue of jurisdiction first.

Subject matter jurisdiction is essential before a court has the judicial power to decide either a question of law or fact. In Texas, the amount of money in controversy between the parties to a civil suit is a significant component of subject matter jurisdiction. *See Clonts v. Johnson,* 116 Tex. 489, 493–94, 294 S.W. 844, 846 (1927). Generally, every Texas trial court has constraints, to one degree or other, on its subject matter jurisdiction because of the amount in controversy requirement imposed either by the Texas Constitution or by legislative enactment. *See id.* If the amount in controversy between the parties exceeds the monetary limits that a trial court is permitted to consider, the trial court, with limited exceptions, has no jurisdiction to decide any issue in the case. The amount in controversy is determined by the good faith pleadings of the parties and, ultimately, by the proof adduced at trial. *See Peek v. Equipment Serv. Co.,* 779 S.W.2d 802, 804 (Tex.1989). A county court at law in Dallas County has a maximum jurisdictional limit of $100,000, exclusive of amounts otherwise allowed by law. TEX. GOV'T CODE ANN. §§ 25.0003(c)(1), 25.0592 (Vernon 1988 & Supp.1997).

In this case, the trial court dismissed appellant's counterclaim because it concluded the damages alleged in appellant's first amended counterclaim exceeded the maximum jurisdictional limits of the court. Unquestionably, they did. But appellant had amended its counterclaim to state in its third amended counterclaim "damages in an amount not to exceed the maximum jurisdictional limits of the court and not less than $95,000." This allegation established the amount in controversy to be within the trial court's $100,000 jurisdictional limit. Moreover, from the inception of its counterclaim, appellant alleged unliquidated damages that would have to be proved at trial.

A party generally has the right to amend its pleadings freely. *See Lee v. Key West Towers, Inc.,* 783 S.W.2d 586, 588 (Tex. 1989); *Jago v. Indemnity Ins. Co. of N.Am.,* 120 Tex. 204, 208, 36 S.W.2d 980, 982 (1931). If a party, however, alleges an amount of damages in excess of a trial court's jurisdictional limits and the damages as alleged are

liquidated and nonseverable, then the party cannot freely amend its pleadings to reduce its liquidated damage claim to an amount to be within the trial court's jurisdiction. *See Failing v. Equity Management Corp.,* 674 S.W.2d 906, 908–09 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Williams v. Trinity Gravel Co.,* 297 S.W. 878, 879 (Tex.Civ. App.—Eastland 1927, no writ); *Burke v. Adoue,* 3 Tex.Civ.App. 494, 22 S.W. 824, 825 (Galveston 1893, no writ). The opposite generally holds true if the claimed damages are unliquidated. A party may freely reduce its unliquidated claim if the party pleads in good faith. *See Lucey v. Southeast Tex. Emergency Physicians Assocs.,* 802 S.W.2d 300, 303–04 (Tex.App.—El Paso 1990, writ denied).

Because appellant claimed unliquidated damages, it was free to amend its counterclaim to state an amount of damages within the trial court's jurisdictional limits. It did so in its third amended counterclaim. Amended pleadings supersede and supplant previous pleadings. *Radelow–Gittens Real Property Management v. Pamex Foods,* 735 S.W.2d 558, 559 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). The first amended counterclaim, having been permissibly superseded, was immaterial to the question of what amount was in controversy. Based on the allegations in the third amended counterclaim, the trial court had subject matter jurisdiction over appellant's counterclaim. The trial court clearly erred in concluding otherwise and, consequently, erred in dismissing appellant's counterclaim for want of jurisdiction. We sustain appellant's sixth point of error.

Next we address appellant's third point of error. Appellant contends the trial court erred by refusing to allow it to file its requested trial amendment. We agree that the trial court committed reversible error by denying appellant leave to file the trial amendment and thereafter granting judgment to appellee. We conclude the trial court had no discretion to refuse appellant's request.

The right to file an amended pleading is recognized in the Texas Rules of Civil Procedure. First, rule 63 provides that "[p]arties may amend their pleadings ... as they may desire" at any time so long as the amended

pleading does not "operate as a surprise" to the opposing party. Tex.R.Civ.P. 63. The rule further provides that if the proffered amendment is made "within seven days of trial, or thereafter," then the party seeking to amend must obtain the trial court's permission before filing it. Tex.R.Civ.P. 63. The trial court can withhold its permission, however, only upon a "showing that such filing will operate as a *surprise* to the opposite party." Tex.R.Civ.P. 63 (emphasis added). Otherwise, the trial court has no discretion to deny the requested amendment.

Rule 66 also addresses amended pleadings. This rule is titled "Trial Amendment" and provides:

> [I]f during the trial any defect, fault or omission in a pleading, either in form or substance, is called to the attention of the court, the court may allow the pleading to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would *prejudice* him in maintaining his action or defense upon the merits.

Tex.R.Civ.P. 66 (emphasis added). Although rule 66 expressly covers amendments made during trial, rule 63 does also through its reference to pleadings filed "within seven days of trial, or thereafter." There are, however, apparent differences in the two rules. For example, rule 63 requires a party opposing a trial amendment to show "surprise" before the trial court may deny the amendment. Rule 66 does not refer to surprise. Instead, it requires an opposing party to show "prejudice" before the trial court may deny the amendment.

In this case, the trial court expressly concluded appellee had not shown surprise. The trial court, however, concluded appellee demonstrated prejudice. Thus, in denying appellant's requested trial amendment, the trial court apparently applied rule 66, not rule 63.[1]

■ Under rule 66, three conditions must first occur before a trial court has *any* discretion to deny a requested trial amendment. First, the party seeking the amendment must ask the trial court's permission to file the proposed amendment and tender it for filing. *See American Pozzolan Corp. v. Desert Trucking Co.*, 450 S.W.2d 433, 435 (Tex. Civ.App.—San Antonio 1970, writ ref'd n.r.e.). This condition necessitates the proposed amendment be reduced to writing. *See Century Rental Equip., Inc. v. Neo-Flasher Mfg. Co.*, 378 S.W.2d 957, 959 (Tex. Civ.App.—Houston 1964, no writ). Second, the party opposing the amendment must timely object to the amendment's filing. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940–41 (Tex.1990). This condition necessitates the objection be evidenced in the record of the case. But the objection need not be in writing. Third, the party opposing the amendment must discharge its burden to show by evidence adduced that it would be prejudiced by the filing of the amendment. *See id.*

Because the trial court initially has no discretion to deny a trial amendment, all three conditions described above must occur before the trial court's discretion redounds. In this case, the first two conditions are clearly met. At issue is the third condition: prejudice.

■ Normally, prejudice must be shown by evidence adduced by the party opposing the amendment. *See id.* But there is an exception to this requirement. When the proposed amendment on its face reveals prejudice to the opposing party, then that party is relieved of its burden to adduce evidence. *See Hardin v. Hardin*, 597 S.W.2d 347, 350 (Tex.1980). In effect, the proposed amended pleading itself provides the necessary showing. If the exception is to be applied, the question that must be answered is how does the proposed amendment reveal prejudice on its face? This question is at the center of appellant's third point of error.

---

1. We note that prejudice of some sort may be required under rule 63 also. Although rule 63 requires a showing of surprise, every unexpected amended pleading can be considered a "surprise" to the opposing party. Because of this, merely claiming subjective surprise is not enough to prevent the filing of a trial amendment. The remedy to cure the disadvantage of surprise alone is a continuance, not exclusion of the amendment.

■ A proposed amended pleading that asserts a new cause of action or defense may be prejudicial on its face. *See id.* at 349. But merely because an amended pleading asserts a new cause of action or defense does not make it prejudicial to the opposing party as a matter of law. *See State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). The new pleading must be evaluated in the context of the record of the entire case. *See id.* at 658–59.

■ The supreme court's decision in *Hardin v. Hardin* is the leading authority recognizing that an amended pleading asserting a new cause of action or defense may be prejudicial on its face. A close reading of *Hardin* and other supreme court precedent reveals that an amendment prejudicial on its face has three defining characteristics ascertainable from the pleading itself as viewed in the context of the record of the case. First, the amended pleading must assert new substantive matter that reshapes the nature of the trial itself. *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co., Inc.,* 844 S.W.2d 664, 665 (Tex.1992); *Hardin,* 597 S.W.2d at 349. Recast assertions or new procedural issues do not qualify as new substantive matter. *See Chapin,* 844 S.W.2d at 665. Even an additional, separately stated cause of action or defense may not be a new substantive matter if it has common elements with matters previously asserted and the evidentiary proof required to support it is the same for an already pleaded cause of action or defense. *See State Bar of Tex.,* 874 S.W.2d at 658. Second, the new matter asserted must be such that it could not be anticipated by the opposing party in light of the development of the case up to the time the amendment was requested. *See Hardin,* 597 S.W.2d at 350. Parties are not rewarded, however, for their lack of insight or perception. Thus, merely because the opposing party did not anticipate the issues in the amendment is not the test. The question is whether the opposing party *could* have anticipated the newly asserted matter as revealed by the record of the case. Third, if the amendment were allowed, the opposing party's presentation of the case would be affected detrimentally. *See id.* Whether a continuance would alleviate the impact of the amendment on the presentation of the case is not controlling. But a delay occasioned by a continuance, unnecessary if the amendment were not allowed, may add to the prejudice of the proposed amendment. *See id.*

■ Here, appellant's trial amendment did not assert new substantive matter. Contrary to appellee's contention, the amendment did not raise a new defense substantively. It attempted only to comply with a procedural requirement of contesting appellee's sworn account by a verified denial pursuant to a rule that functions to allocate the burden of proof. *See Chapin,* 844 S.W.2d at 665; TEX.R.CIV.P. 185.

The requested amendment also could have been anticipated by appellee. In fact, we infer that appellee actually did anticipate it. When appellant did not file an amendment before trial, appellee on the day of trial, but only after confirming with the trial court that the trial had begun, brought forward a written motion prepared in advance seeking judgment because appellant had not filed the very pleading in issue. Regardless of whether appellee preconceived the possibility that appellant would file a verified pleading contesting the sworn account, the record of the case reveals the damages appellee claimed arose under the parties' agreement. Appellant vigorously contested appellee's claim of damages and had asserted defensively that appellee was not entitled to any amount under its sworn account. The record of the case itself reveals that appellee could have anticipated a verified denial of its sworn account.

Lastly, the amendment, if it were allowed, would not have affected appellee's presentation of the case. Appellee's argument was simply that if the amendment were allowed, appellee would have to prove its case. Yet, appellee was prepared to do so. Appellee conceded that the witnesses necessary to prove its alleged account were available and ready to testify. Appellee was never put in the position of having to seek a continuance to alleviate the impact of the amendment on its presentation of the case.

Out of the three things that must exist before a requested trial amendment may be considered prejudicial on its face, not one existed in this case. Contrary to the trial court's conclusion that the requested amendment was prejudicial on its face, it was not as a matter of law. Because the amendment was not prejudicial on its face and appellee made no showing otherwise that the amendment was prejudicial, the trial court had no discretion to deny appellant's request to file it. The trial court erred in doing so. We sustain appellant's third point of error.

We reverse the trial court's judgment, including its order dismissing appellant's counterclaim. We remand the case to the trial court for further proceedings.