**HAMPDEN CORPORATION and Fantasy Diamond Corporation, Appellants,**

v.

**REMARK, INC. and Robert Kramer, Appellees.**

No. 05–09–00276–CV.

Court of Appeals of Texas, Dallas.

Dec. 21, 2010.

Rehearing Overruled Jan. 31, 2011.

Brett Kutnick, Jennifer Rangel Stagen, Jeffrey S. Levinger, Hankinson Levinger LLP, Dallas, Brett Kutnick and Jennifer Rangel Stagen, for Appellants.

Evan Lane (Van) Shaw, Law Offices of Van Shaw, Dallas, TX, Thomas M. Michel, Griffith, Jay & Michel, LLP, Fort Worth, TX, for Appellees.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Hampden Corporation and Fantasy Diamond Corporation appeal the trial court's judgment in favor of Remark, Inc. asserting, in six issues, that (1) the trial court erred by granting Remark and Robert Kramer leave to file a post-trial amended petition alleging a new breach of contract claim, by entering judgment against Hampden and Fantasy on the newly-pleaded breach of contract claim, in calculating damages, and by awarding attorney's fees, and (2) the evidence conclusively established Remark's newly-pleaded claim for breach of contract is barred by waiver, estoppel, or the statute of limitations. We conclude the trial court erred by allowing Remark and Kramer to amend their petition after trial. We vacate the trial court's judgment and remand this case to allow the trial court to consider the evidence in light of the live pleading at trial.

### Factual Background

Hampden and Fantasy design, manufacture, and sell jewelry and watches. In 1988, Irving Wein, Fantasy Diamond's chairman, contacted Kramer about facilitating sales of these products to JCPenney. In September 1988, Kramer and Remark, a company formed by Kramer, entered into a sales representation agreement with Fantasy and Benrus Watch Company, Inc., a predecessor to Hampden. Remark and Kramer agreed to facilitate the sale of Fantasy's and Benrus's products to JCPenney, and Fantasy and Benrus agreed to pay Remark and Kramer a five percent commission on net sales to JCPenney. The agreement was subsequently amended on at least three occasions.

In 1996, Jim Herbert, the vice-president of Hampden, notified Remark and Kramer that he had been unable to locate a signed representation agreement between Remark and either Hampden or Fantasy. Remark then entered into a sales representation agreement with Benrus and Fantasy (the 1996 Agreement). Benrus and Fantasy agreed to pay Remark a five percent commission on the net sales of Benrus/Hampden and Fantasy products to JCPenney. The agreement provided it would "continue and remain in full force and in effect until cancelled by either party, which cancellation may be effected by either party giving to the other 15 days'

notice in writing of its intent to cancel." The termination notice was to be "mailed by certified or registered mail."

In July 2002, Irving died, and his son, Joseph Wein, became chairman and chief executive officer of both Hampden and Fantasy. Joseph had conversations with Herbert, president of Hampden, and Louis Price, president of Fantasy, about the unprofitability of the JCPenney accounts of both businesses. Both Herbert and Price recommended that the sales representation agreement with Remark be terminated. Because Kramer and Irving had been close friends, Joseph was reluctant to terminate the agreement.

Joseph testified that he negotiated with Kramer in 2002 to reduce the commission in the sales representation agreement to two and one-half percent. Kramer denied there was a negotiation, but admitted he agreed to the reduction in the commission. On October 24, 2002, Herbert and Price each sent a letter to Kramer reflecting the changed commission structure for the sale of Hampden's and Fantasy's products to JCPenney (collectively the 2002 Agreement). Kramer signed both letters, indicating he agreed to the change in the commission. Beginning January 1, 2003, Fantasy and Hampden paid Remark the reduced commission on all sales to JCPenney.

According to Joseph, Herbert, and Price, the JCPenney accounts continued to be unprofitable, and Herbert and Price again recommended terminating the Remark representation agreement. Joseph told Kramer that he needed to prepare to have his income from the two companies reduced. On June 30, 2004, Joseph sent Kramer a letter indicating that "per [their] conversation," Remark would no longer receive commissions, but would be placed on retainer (the 2004 Agreement). Kramer was not requested to, and did not, sign this letter acknowledging acceptance of the change from a commission to a retainer. From July 2004 through June 2005, Remark received a monthly retainer of $8,333. Beginning July 1, 2005, Remark's monthly retainer was reduced to $6,250.

On January 18, 2005, Joseph wrote Kramer a letter stating that Joseph's "thoughtful judgment is that neither Fantasy nor Hampden requires ongoing outside representation at JC Penney or anywhere else." He further stated he had "made the difficult decision that [Remark's retainer] payments will end entirely on Dec. 31, 2005, and our representation relationship will cease." There was no indication on the letter that it was mailed by either registered or certified mail. Kramer testified he believes he received the letter. Fantasy and Hampden paid Remark's retainer throughout 2005.

On December 14, 2005, an attorney representing Kramer and Remark sent a letter to Hampden indicating he had been hired with respect to Kramer's and Remark's "claims for monies owed related to internet sales via J.C. Penney." He stated that "Mr. Kramer and Remark were promised a residual percentage interest in this account for the remainder of Mr. Kramer's life for his efforts to obtain same and that same was obtained as the direct result of the efforts of Mr. Kramer." The attorney stated "Mr. Kramer as an accommodation reduced his percentage to 2.5% of sales," but Hampden failed to perform. The attorney requested an accounting beginning November 2003 based on the two and one-half percent commission in the 2002 Agreement.

At trial, Kramer testified that he had conversations with Irving during the 1990s about a retirement program. According to Kramer, Irving orally agreed that Kramer would receive a commission on sales to JCPenney until Kramer was eighty-five

years old. If Kramer died before he was eighty-five years old, his wife would receive the payments for an additional five years. Kramer testified this agreement was never put into writing and he never told anyone about the agreement. Joseph, Price, and Herbert testified they had no knowledge of the life-time agreement and believed an oral life-time agreement would be inconsistent with Irving's general business practices.

## Procedural Background

Remark and Kramer sued Hampden for breach of contract. The petition alleged Hampden's "former principal and Chief Executive Officer" promised that Hampden would pay Remark a "percentage" of any business with JCPenney for the remainder of Kramer's life. Remark and Kramer further alleged that, although Kramer had agreed to reduce the commission, Hampden had failed to perform and had terminated payments under the agreement. Remark and Kramer sought an accounting for the amounts owed and a declaratory judgment that Hampden was required to pay commissions for the remainder of Kramer's life.

Remark and Kramer added Fantasy as a defendant in their first amended petition. As to the breach of contract claim, the first amended petition alleged only that Hampden and Fantasy breached a "contract for the payment of monies." Remark and Kramer also asserted claims for fraud, negligent misrepresentation, and quantum meruit. The first amended petition did not specifically allege a life-time agreement, and Remark and Kramer dropped their claim for declaratory relief.

In their second amended petition, Remark and Kramer alleged Hampden and Fantasy had breached the contract "in failing to pay Plaintiff per **Exhibits 'A' and 'B'**" (emphasis in original). Exhibits "A"

and "B" were the two letters from Hampden and Fantasy constituting the 2002 Agreement. In their third amended petition, Remark and Kramer added a cause of action based on a violation of section 35.84 of the business and commerce code. As relevant here, Remark and Kramer's claims remained essentially the same in their fourth and fifth amended petitions.

The live pleading at trial was Remark and Kramer's sixth amended petition. Remark and Kramer continued to allege the 2002 Agreement was the operative contract and that Hampden and Fantasy had breached that agreement. However, Remark and Kramer amended their quantum meruit claim to allege Kramer's "sharing of [his] extensive network [at JCPenney], formed the basis for the promise of life time commissions to REMARK, and commissions to Kramer's wife if Robert Kramer died before the age of 85." Remark and Kramer also alleged that Kramer was fraudulently induced to accept a reduction in the commission by Hampden and Fantasy leading Kramer to believe they were aware of the life-time agreement.

The case was tried to the court. During his opening statement, Remark and Kramer's attorney stated that Kramer would testify there was a "life-time deal" and that the 2002 Agreement was not supported by consideration. In his opening statement, Hampden and Fantasy's attorney noted the 1996 Agreement was in writing and the oral life-time agreement did not exist. However, counsel asserted, if there was an oral agreement, it violated the statute of frauds and the parol evidence rule.

During closing argument, Remark and Kramer's attorney abandoned the oral life-time agreement claim. Rather, he argued the 1996 Agreement was the operative agreement, the 2002 and 2004 Agreements were not supported by consideration, and

the 1996 Agreement was not properly terminated. The following day, Hampden and Fantasy filed a post-trial brief arguing that the claim the 1996 Agreement was breached was not supported by Remark and Kramer's pleadings and was barred by the statute of limitations. That same day, the trial court issued a memorandum finding Fantasy and Hampden breached the 1996 Agreement and were liable to Remark and Kramer in a total amount of $785,902.51.

Remark and Kramer sought leave to file a seventh amended petition asserting a breach of the 1996 Agreement. In the proposed amendment, Remark and Kramer alleged the 2002 Agreement was void due to lack of consideration. Hampden and Fantasy responded that the claim was not tried by consent and was contrary to positions taken by Remark and Kramer in their live pleadings before trial. The trial court granted Remark and Kramer's request to file the seventh amended petition and rendered judgment in favor of Remark against Hampden and Fantasy. Fantasy and Hampden filed this appeal.

## Breach of the 1996 Agreement

In their first issue, Hampden and Fantasy allege the trial court erred by rendering judgment on the unpleaded claim for breach of the 1996 Agreement and the error was not cured by the trial court granting Remark and Kramer leave to file the seventh amended petition after trial. Specifically, Hampden and Fantasy argue a breach of the 1996 Agreement was not tried by consent and that the amendment was prejudicial on its face and they were surprised and prejudiced by it.

### Trial By Consent

Remark and Kramer's live pleading at trial alleged, in relevant part, that Hampden and Fantasy breached the 2002 Agreement. Remark and Kramer did not allege a breach of the 1996 Agreement in the sixth amended petition. In fact, the pleading did not mention the 1996 Agreement. Accordingly, Remark and Kramer can only recover based on a breach of the 1996 Agreement if the issue was tried by consent. *See Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983) ("Thus, a party may not be granted relief in the absence of pleadings to support that relief."); *Elliott v. Hollingshead,* 327 S.W.3d 824, 836 (Tex.App.-Eastland 2010, no pet.) (concluding party may not be granted relief in absence of adequate pleadings unless issue is tried by consent).

The trial court has broad discretion in determining whether an unpleaded issue was tried by consent. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.,* 184 S.W.3d 760, 771 (Tex.App.-Dallas 2005, pet. denied). However, although that discretion is to be exercised liberally in favor of justice, trial by consent is the exception, not the rule, and should not be inferred in doubtful cases. *Id.* at 772. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

Issues not raised in the pleadings can be tried by express or implied consent of the parties. Tex.R. Civ. P. 67; *Case Corp.,* 184 S.W.3d at 771; *Pickelner v. Adler,* 229 S.W.3d 516, 523 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). However, this rule "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Case Corp.,* 184 S.W.3d at 771 (quoting *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 281 (Tex.App.-Houston [14th Dist.] 1999, pet. denied)); *see also Moore v. Altra Energy Technologies, Inc.,* 321 S.W.3d 727, 734 (Tex.App.-Houston [14th Dist.]

2010, pet. filed). To determine whether the unpleaded issue was tried by consent, the trial court must examine the record not for evidence of the issue, but rather for evidence the issue was tried. *Case Corp.*, 184 S.W.3d at 771; *Moore*, 321 S.W.3d at 734. The unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex.2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."); *Case Corp.*, 184 S.W.3d at 771; *Moore*, 321 S.W.3d at 734. An issue is not tried merely because there is evidence on the issue, but can be deemed tried by consent when both parties present conflicting evidence on the subject. *Ingram*, 288 S.W.3d at 893. On the other hand, an issue is not tried by consent when the evidence relevant to the unpleaded issue is also relevant to a pleaded issue because admitting that evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' "clear intent" to try the unpleaded issue. *Case Corp.*, 184 S.W.3d at 771; *Moore*, 321 S.W.3d at 734.

■ Remark and Kramer assert the breach of the 1996 Agreement was tried by consent because "lack of consideration for the modification was raised at all phases of the trial." Remark and Kramer also argue there was testimony at trial that the 1996 Agreement was the controlling contract and about the amount of money that would be owed to Remark based on the five percent commission in the 1996 Agreement. Remark and Kramer specifically rely on (1) Joseph's testimony that Remark was not paid any additional money in 2002 as consideration for reducing the commission to two and one-half percent, that the 1996 Agreement was the controlling agreement, and about the net sales to JCPenney and what would be owed to Remark based on a five percent commission; and (2) Kramer's testimony that there were no negotiations prior to the 2002 or the 2004 Agreements and that Remark received no consideration when the commission was reduced to two and one-half percent or when Remark's commission was replaced with a retainer.

After reviewing the record, we cannot conclude the parties tried by consent a claim for breach of the 1996 Agreement. Whether there was consideration for the 2002 and 2004 Agreements was relevant to (1) Remark and Kramer's pleaded claim that the 2002 Agreement was the controlling contract and had been breached by the 2004 Agreement, and (2) the amount of the commission that would be owed if Remark and Kramer recovered under the quantum meruit claim based on the lifetime agreement. The existence of the 1996 Agreement was relevant to Hampden and Fantasy's defense that the written contract barred the alleged oral life-time agreement that was the basis of Remark and Kramer's quantum meruit claim. Although testimony about what would be owed under the 1996 Agreement is not clearly relevant to either claim, it was relevant to the parties' relationship over an extended period of time. Finally, at one point, Hampden and Fantasy's attorney objected to the questioning of Joseph about what would be owed to Remark based on a five percent commission:

Q: Sir, he was highly not compensated. You owed him on these sales alone more than a million bucks based on the '96 contract. Five percent of 21 million is more than a million dollars. Whey do you keep saying that?

Mr. Logan: Your Honor, that's not even their contention in the lawsuit. Mr. Kramer's admitted to the 2.5 percent. In fact, today there was testimony and in his deposition. I don't know why we keep beating this dead horse.

The trial court did not rule on the objection, but, without obtaining an answer to the question, Remark and Kramer's counsel turned to questioning Joseph about the 2002 Agreement. However, Hampden and Fantasy's attorney's objection indicates Hampden and Fantasy did not have a clear intent to try a breach of the 1996 Agreement.

■ Remark and Kramer argue Hampden and Fantasy failed to preserve for appeal the question of whether a breach of the 1996 Agreement was tried by consent because they did not object to the evidence, seek a continuance, or request to reopen the evidence. As set out above, the evidence relied upon by Remark and Kramer to support their argument a breach of the 1996 Agreement was tried by consent was relevant to Remark and Kramer's pleaded claims and does not establish that Hampden and Fantasy were on clear notice that breach of the 1996 Agreement was the issue being tried. Accordingly, Hampden and Fantasy were not required to object to the evidence. *See Case Corp.*, 184 S.W.3d at 771; *Moore*, 321 S.W.3d at 734. Further, Hampden and Fantasy's failure to request a continuance or to reopen the evidence is not dispositive as to whether they preserved the issue for appeal. *See Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex.App.-

Dallas 1996, writ denied) ("whether a continuance would alleviate the impact of the amendment on the presentation of the case is not controlling"). Based on the record, it was not clear until closing argument that Remark and Kramer had abandoned the claim for breach of contract based on the 2002 Agreement or for quantum meruit based on the alleged life-time agreement. The next day, while the case was still under submission, Hampden and Fantasy filed a post-trial brief arguing a breach of the 1996 Agreement was not pleaded and was not tried by consent.

We conclude Hampden and Fantasy timely objected that they did not try the breach of the 1996 Agreement by consent and, therefore, preserved the issue for appeal. We further conclude the trial court abused its discretion by concluding the parties tried a breach of the 1996 Agreement by consent.

### Amendment of Pleading

■ Hampden and Fantasy next argue the trial court did not cure its error by granting Remark and Kramer leave to file a post-trial amended pleading asserting a breach of the 1996 Agreement. The Texas Rules of Civil Procedure recognize the right to file an amended pleading. Under rule of civil procedure 63, a party may amend its pleadings after the verdict, but before the trial court has entered judgment, unless the opposing party establishes surprise. *See Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990).[1] Further, under rule of civil procedure 66, a trial court is required to freely

---

1. Rule 63 provides:

    Parties may amend their pleadings ... by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings ... offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

    Tex.R. Civ. P. 63.

grant a request to amend pleadings during trial unless the opposing party presents evidence the amendment would prejudice that party in maintaining an action or defense on the merits. TEX.R. CIV. P. 66;[2] *see also State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.1994) (per curiam)

The trial court must allow an amendment to a pleading if it is merely procedural in nature such as conforming the pleadings to the evidence at trial. *Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co.,* 844 S.W.2d 664, 665 (Tex.1992) (per curiam); *Rodriguez v. Crowell,* 319 S.W.3d 751, 759 (Tex.App.-El Paso 2009, pet. denied); *Stephenson v. LeBoeuf,* 16 S.W.3d 829, 839 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (op. on reh'g). However, an amendment is not mandatory if it asserts new substantive matter that reshapes the cause of action. *Greenhalgh,* 787 S.W.2d at 940; *see also Chapin,* 844 S.W.2d at 665; *Rodriguez,* 319 S.W.3d at 759. If the amendment is not mandatory, the decision to allow the amendment is within the trial court's discretion. *Kilpatrick,* 874 S.W.2d at 658; *Stephenson,* 16 S.W.3d at 839. We will reverse the trial court's decision to allow an amendment only if the trial court clearly abused its discretion. *Kilpatrick,* 874 S.W.2d at 658; *Stephenson,* 16 S.W.3d at 839.

"Under Rules 63 and 66 a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice, or 2) the amendment asserts a new cause

of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Greenhalgh,* 787 S.W.2d at 939 (internal citations omitted); *see also Rodriguez,* 319 S.W.3d at 758–59. However, merely because an amended pleading asserts a new cause of action does not make it prejudicial to the opposing party as a matter of law. *Smith Detective Agency,* 938 S.W.2d at 749; *Rodriguez,* 319 S.W.3d at 759. Rather, the amendment must be evaluated in the context of the record of the entire case. *Smith Detective Agency,* 938 S.W.2d at 749; *Rodriguez,* 319 S.W.3d at 759. An amendment is prejudicial on its face if, viewed in the context of the record, (1) it asserts a new substantive matter that reshapes the cause of action or the nature of the trial, (2) the opposing party could not have anticipated the amendment in light of the prior development of the case, and (3) the amendment would detrimentally affect the opposing party's presentation of the case. *Greenhalgh,* 787 S.W.2d at 940; *Halmos v. Bombardier Aerospace Corp.,* 314 S.W.3d 606, 623 (Tex.App.-Dallas 2010, no pet.); *Stephenson,* 16 S.W.3d at 839.

We turn first to whether the seventh amended petition asserted a new substantive matter that reshaped Remark and Kramer's cause of action. The seventh amended petition asserted a new claim that Hampden and Fantasy breached the 1996 Agreement. However, an additional cause of action may not be a new substantive matter if it has common elements with

---

**2.** Rule 66 provides;
If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the mer-

its of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence. TEX.R. CIV. P. 66.

pleaded matters and the evidentiary proof required to support it is the same for an already pleaded cause of action. *Smith Detective Agency*, 938 S.W.2d at 749 (citing *Kilpatrick*, 874 S.W.2d at 658). Remark and Kramer initially pleaded a breach of the 2002 Agreement. Following the trial, Remark and Kramer pleaded a breach of the 1996 Agreement and that the 2002 Agreement was void and did not modify the 1996 Agreement. There are no common elements between the pleaded claim for breach of the 2002 Agreement and the unpleaded claim for breach of the 1996 Agreement.

We next consider whether Hampden and Fantasy could have anticipated Remark and Kramer were actually trying a breach of the 1996 Agreement. The question is not whether the opposing party actually anticipated the new issue, but whether, based on the record, it could have been anticipated. *Smith Detective Agency*, 938 S.W.2d at 749; *Rodriguez*, 319 S.W.3d at 759. We have already noted that the evidence admitted relating to the 1996 Agreement and the lack of consideration for the 2002 and 2004 Agreements was relevant to pleaded claims. Accordingly, Hampden and Fantasy could not have anticipated the new claim of breach of the 1996 Agreement until Remark and Kramer's attorney announced the new position during closing argument.

We finally consider whether allowing the seventh amended petition detrimentally affected Hampden and Fantasy's presentation of the case. Hampden and Fantasy objected to the seventh amendment petition and asserted the new claim was prejudicial on its face and that they were surprised and prejudiced by it. Hampden and Fantasy's attorney certified that Hampden and Fantasy did not have the opportunity to question Kramer during his deposition or at trial about the new claim,

to impeach Kramer with his prior inconsistent statements that the 2002 Agreement was binding, to conduct discovery on the new claim, or to challenge the claim by motion for summary judgment. Remark and Kramer offered no evidence that Hampden and Fantasy's presentation of the case was not prejudiced.

We conclude the seventh amended petition asserted a new cause of action, was prejudicial on its face, and that Hampden and Fantasy timely objected to the amended pleading. Accordingly, the trial court erred by granting Remark and Kramer leave to file the post-trial pleading. We sustain Hampden and Fantasy's first issue. Because of our disposition of the first issue, we need not address Hampden and Fantasy's remaining issues. *See* Tex. R.App. P. 47.1.

■ A judgment that is not supported by any pleading or tried by consent is void. *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex.App.-Dallas 2009, no pet.) (op. on reh'g); *see also See* Tex.R. Civ. P. 301 (requiring judgment to conform to pleadings); *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex.1979). Accordingly, we vacate the trial court's judgment and remand this case to the trial court to allow it to consider the evidence at trial in light of the claims pleaded in Remark and Kramer's sixth amended petition.