

## NUMBER 13-12-00165-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**WILLIAMS FARMS PRODUCE
SALES, INC.,**                                                             **Appellant,**

**v.**

**R&G PRODUCE SALES, INC.,**                                    **Appellee.**

**On appeal from the County Court at Law No. 1
of Cameron County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

By one issue, which we address as two, appellant, Williams Farms Produce Sales, Inc. (Williams Farms), challenges the trial court's denial of its plea to the jurisdiction. In its first issue, Williams Farms argues that the trial court erred by denying its plea to the jurisdiction because appellee, R&G Produce Company (R&G), filed sham pleadings when it listed the amount in controversy within the trial court's jurisdictional limit even though its

expert report and testimony from its owner revealed that its damages exceeded that amount. In its second issue, Williams Farms argues that the trial court erred by denying its plea to the jurisdiction because the increase in damages in R&G's amended pleadings were not due to the passage of time. We affirm.

## I. BACKGROUND

On May 28, 2008, R&G filed a suit on sworn account in Cameron County Court at Law No. 1, listing Edward May and Williams Farms as defendants. The petition alleged that Williams Farms, using Edward May as a broker, accepted goods from R&G and became "bound to pay [R&G] its designated charges . . . ." R&G claimed that it was a farmer of grape tomatoes and that Williams Farms had failed to pay the amount due in a series of contracts for the purchase of tomatoes. In its prayer, R&G listed as damages the alleged amount due on the contract, which was $490,725, reasonable attorney's fees, pre- and postjudgment interest, cost of suit, and "all other relief in law or in equity to which Plaintiffs may be justly entitled."

On September 26, 2008, R&G filed a third amended petition[1] in which it added a negligence claim against defendant Edward May for his role as broker and a joint enterprise claim against both defendants alleging that they had an agreement and a common purpose to "commit a tort against [R&G] while acting within the scope of the enterprise." R&G added no damages to its third amended petition beyond what it requested in the earlier petitions. Williams Farms responded by filing requests for disclosures, which demanded that R&G disclose the amount of, and any method of

---

[1] R&G filed first and second amended petitions adding claims for breach of contract and for violations of the Theft Liability Act (TLA), and adding additional statutory damages and exemplary damages under the TLA to its prayer.

calculating, economic damages.  R&G subsequently filed its responses to these requests and attached an expert report from Dr. John Brown listing damages, resulting from the breach of contract and negligence of both defendants, of $2,264,431, assuming production had remained constant, and $3,880,142, assuming production had doubled. Then, on January 27, 2009, R&G filed a fourth amended petition in which it added an individual negligence claim against Williams Farms and requested damages in total "up to the court's jurisdictional limit of one million dollars, exclusive of [pre- and postjudgment interest,] costs of suit, and all other relief at law or in equity to which Plaintiff may be justly entitled."  R&G argues that it was entitled to these damages because it "was never paid what it was owed—literally its 'seed money'—it was forced to suspend operations, including its plans to double its production in the 2008−2009 production season."

On March 4, 2009, Williams Farms filed a plea to the jurisdiction arguing that the trial court lacked subject matter jurisdiction over the case because the amount in controversy listed in R&G's pleadings was a sham and R&G's expert report showed that their alleged damages exceeded the county court's $1,000,000 jurisdictional limit.[2]  In its response, R&G argued that it had alleged an amount in controversy within the court's jurisdictional limit in all of its pleadings and denied "in the strongest terms possible that its pleadings in particular, or its case in general, [were] fraudulent or [were] otherwise 'a sham to obtain jurisdiction in this court.'"  At the hearing on the plea to the jurisdiction, Williams Farms called the owner of 99 percent of R&G, Gracie Lopez, who testified that

_____

[2] "[A] county court at law in Cameron County . . . has concurrent jurisdiction with the district court in civil cases in which the amount in controversy exceeds $500 but does not exceed $1 million, excluding interest."  TEX. GOV'T CODE ANN. § 25.0332 (West 2004).

3

the amount of damages listed in the expert report was "what we would have made if Williams Farms would have paid us the [money] they owed us." She also stated, "I'm asking for whatever [my attorney] has cited, or asked for." Defense counsel asked Lopez if she understood how R&G "would cut damages or reduce damages that . . . Dr. Brown talks about from two, three or five million dollars, do you know how he would calculate it to cut it down to under a million, or to a million?" Further, defense counsel asked, "Have you ever calculated damages in this particular case that total one million dollars or less?" Lopez responded "I don't know" to both questions. Later, R&G's attorney asked Lopez if the one million dollars requested in the fourth amended pleadings "was the amount of damages R&G was seeking from both defendants for all causes of action," to which she replied, "yes sir."

Defense counsel then called Roel Canales, one percent owner of R&G. When asked "Would you be able to explain to us how the plaintiff would calculate damages, or reduce damages from what Dr. Brown says they are to a million dollars," Canales responded, "Well, my answer would be I'm the grower for R&G, and I can calculate more than that." Defense counsel then asked him "how you reduce damages from the amounts calculated by Dr. Brown to a million dollars?" Canales answered, "I haven't seen it, and I don't know."

At the close of evidence, the trial court reasoned:

I've looked at the live petitions, expert report, and then the discovery that's gone on in this case from the beginning to the end. Things have changed, and I can't expect people to dismiss, go to another court, file another suit when I think the case law says that this court at the beginning had jurisdiction, and I'm going to make a finding that there was no bad faith in this case, no sham. I think everything was on the up and up . . . . I'm also going to make a finding that we had two witnesses here, and from their testimony, I make a finding that there was no bad faith [or] sham as far as

4

this case has developed, and I can't expect—new causes come up with new facts. I don't know those facts. That's up to a jury to decide on those facts.
. . .

Ultimately, the trial court denied the plea to the jurisdiction, and the case proceeded in the county court at law.[3] After a trial, the jury found in favor of R&G and determined that it incurred $2,332,596.44 in damages. The trial court ordered Williams Farms to pay R&G the amount of damages found by the jury plus prejudgment interest and attorney's fees. This appeal followed.

## II. SHAM PLEADINGS

Williams Farms contends that the trial court erred when it found that the amount in controversy listed in R&G's pleadings was not a sham and was within the court's jurisdictional limit. Williams Farms argues that the trial court therefore did not possess subject matter jurisdiction over the case.[4] We disagree.

---

[3] On September 1, 2009, Williams Farms filed a petition for writ of mandamus and for emergency relief. On September 11, 2009, we denied its petition because it had "failed to establish that it lack[ed] an adequate remedy by appeal" and "failed to show that the trial court clearly abused its discretion by failing to correctly apply the law." *In re Williams Farms Produce, Inc.*, No. 13-09-00507-CV, 2009 WL 2951298, at *1 (Tex. App.—Corpus Christi Sept. 11, 2009, orig. proceeding) (mem. op.).

[4] Williams Farms filed a motion for judgment notwithstanding the verdict and a request for remittitur following the verdict. However, on appeal, Williams Farms challenges only the order denying its plea to the jurisdiction. It does not argue on appeal that the trial court erred in its final judgment or by denying Williams Farm's post-verdict motions. We cannot reverse the part of the judgment exceeding the one million dollar jurisdictional limit because Williams Farms has not raised an issue or presented argument regarding whether the judgment was void, nor has it argued whether any of the damages determined by the jury were due to the passage of time. *See Kendziorski v. Saunders*, 191 S.W.3d 395, 410 (Tex. App.—Austin 2006, no pet.) (determining that, even though the trial court properly determined it had jurisdiction, the part of its judgment exceeding the county court's $5,000 jurisdictional limit and not incurred due to the passage of time was void); *Oropeza v. Valdez*, 147 S.W.3d 480, 483 (Tex. App.—San Antonio 2004, no pet.) (determining that a trial court's award of damages in excess of its jurisdictional limit was not void because the court could have concluded that the damages accrued due to the passage of time). Notably, in *Sadeghian v. Hudspeth*, the Fort Worth court reversed as void part of a judgment exceeding the trial court's jurisdictional limit and not incurred due to the passage of time even when the appellant, on appeal, did not make this an issue. No. 02-11-00095-CV, 2012 WL 3758084, at *4 (Tex. App.—Fort Worth Aug. 30, 2012, no pet.) (mem. op.). However, the *Sadeghian* court considered damages that were never alleged to result from the passage of time, whereas here, R&G argued at the plea to the jurisdiction that its damages accrued due to the passage of time. *Id.* Additionally, in the present case, Williams Farms has not provided us with the evidence and testimony from the record considered by the jury in its assessment of damages. We

5

### A. Standard of Review & Applicable Law

In absence of pleading and proof of a fraudulently alleged jurisdictional amount in controversy, jurisdiction is determined by the averments in the petition. *See Tidball v. Eichoff,* 17 S.W. 263, 263 (1886). "Therefore, if the pleadings do not show that the plaintiff requests damages exceeding the court's jurisdictional limit, the trial court retains jurisdiction over the case unless the defendant can show that the amount of damages alleged in the pleadings is a sham." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "Whether a determination of subject matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." *Id.* "Where the plaintiff's original and amended petitions do not affirmatively demonstrate an absence of jurisdiction, a liberal construction of the pleadings in favor of jurisdiction is appropriate." *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

### B. Discussion

Williams Farms argues that R&G could "reduce its damage claim to fall within the jurisdictional limits of the trial court only if (1) the assertion of damages in excess of the jurisdictional amount was fixed by inadvertence or mistake, and (2) the amended damage pleading is made in good faith." *See Houston E. & W.T. Ry. Co. v. S. Pine Lumber Co.* 6 S.W.2d 418, 421 (Tex. Civ. App.—Beaumont 1928, no writ). As an initial matter, we disagree with Williams Farms' contention that R&G needed to show that it ever asserted any damages by inadvertence or mistake. R&G never fixed its damages in excess of the

---

therefore confine our analysis to the issues raised by Williams Farms on appeal and consider only whether the trial court erred by finding it had jurisdiction. *See* Tex. R. App. P. 47.1.

court's jurisdictional limit, and therefore never reduced them. The cases cited by Williams Farms refer to circumstances where the litigant at some point pleaded damages in excess of the trial court's jurisdictional limit; whereas, here, Williams Farms alleges that R&G's pleadings were a sham because its expert report showed that it was entitled to greater damages. Because it never fixed its damages in excess of the court's jurisdictional limit, R&G was not required to show that it ever requested any damages by inadvertence or mistake.[5]

Next, we turn to Williams Farms' argument that the trial court abused its discretion by failing to find that R&G's pleadings were a sham because there was evidence in the record indicating that R&G was entitled to more damages than it requested. While it is clear from the record that R&G, in its pleadings, requested damages only up to the court's $ 1,000,000 jurisdictional limit, Williams Farms contends that R&G's expert report, produced in response to Williams Farms' requests for disclosure, shows that it suffered damages of $2,264,431, assuming production had remained constant, and $3,880,142, assuming production had doubled.

---

[5] Furthermore, we disagree with Williams Farms' assertion that if R&G had ever fixed its damages in excess of the court's jurisdictional limit, it would be required to show that it did so by inadvertence or mistake. In *Houston E. & W.T. Ry. Co. v. S. Pine Lumber Co.*, cited by Williams Farms, the Beaumont court of appeals held that a trial court properly determined that it had jurisdiction when the plaintiff amended his pleadings to reduce the amount in controversy to an amount within the court's jurisdictional limit. 6 S.W.2d 418, 421 (Tex. Civ. App.—Beaumont 1928, no writ). The court reasoned that "the reduction in the amount claimed was not fraudulently made. It is perfectly clear, also, that the jurisdictional amount was exceeded through an inadvertence or mistake on the part of the pleader." *Id*. The Beaumont court, however, did not create a *requirement* that the original pleadings be the result of inadvertence or mistake. And, even if it did, courts in more recent cases have declined to adopt such a requirement. *See French v. Moore*, 169 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 747 (Tex. App.—Dallas 1996, writ denied).

However, Williams Farms cites no cases, and we find none, where the trial court has examined a party's specific evidence of damages at a plea to the jurisdiction to determine that the amount in controversy listed in a litigant's pleadings is a sham. And contrary to Williams Farms' argument, the Supreme Court has indicated that an inquiry into the plaintiff's specific evidence of damages is improper at a plea to the jurisdiction. *See Bland*, 34 S.W.3d at 554.

Williams Farms cites the Texas Supreme Court decision in *Bland Independent School District v. Blue* for the proposition that "where the defendant specifically alleges that the amount in controversy was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction, . . . the court is not bound solely by the plaintiff's pleadings." *See Id.* However, *Bland* does not hold that courts must consider specific evidence of damages incurred by the plaintiff to determine whether their pleadings are a sham. In *Bland,* the defendant filed a plea to the jurisdiction arguing that the plaintiff failed to provide evidence that he had incurred damages sufficient to meet the trial court's minimum jurisdictional amount. *Id.* The *Bland* court reasoned that "[a] plea to the jurisdiction cannot be used to require the plaintiff to prove the damages to which he is entitled in order to show that they exceed the court's [minimum] jurisdictional limits." *Id.* The *Bland* court held that an "allegation of damages in excess of [minimum] jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all. *Id.* Were it otherwise, the plaintiff would be required to try his entire case to show an entitlement to damages in excess of the court's jurisdictional limits."[6] *Id.*

---

[6] The *Bland* Court cites the following examples of jurisdictional issues that might require the trial court to consider evidence outside of the pleadings at a plea to the jurisdiction:

8

Notably, the *Bland* Court held that the plaintiff was not required to provide evidence to show that his damages met the *minimum* jurisdictional amount. *Id.* However, we find this same reasoning applies to a trial court's jurisdictional limit. While an expert might calculate damages at a certain amount, other facts might establish a different amount; this is an issue best resolved at trial, and Williams Farms cites no law requiring a party to plead the same amount of damages as an expert report indicates they have suffered.

Moreover, even if the court was required to consider this evidence, no case law indicates that it would be enough evidence to constitute a sham. Instead, Texas courts have repeatedly found in favor of a plaintiff's assertion that a trial court has jurisdiction based on its pleaded amount in controversy.

In the Texas Supreme Court case *Continental Coffee Products Co. v. Cazarez*, the plaintiff in her original pleading sought damages for retaliatory discharge that were within the county court's jurisdictional limit but later amended her pleading to request damages for emotional distress that exceeded the court's jurisdictional limit. 937 S.W.2d at 449. The defendant filed a plea to the jurisdiction arguing that the plaintiff's original petition was a sham. *Id.* At a hearing on the plea, the plaintiff alleged that her original pleading was not a sham and that the increase in her damages resulted because her feelings about

---

For example, when a defendant asserts that a plaintiff organization does not have standing to assert claims on behalf of its members, an evidentiary inquiry into the nature and purpose of the organization sufficient to determine standing does not involve a significant inquiry into the substance of the claims. Rather, a determination of associational standing is a prerequisite to the plaintiff's presentation of its substantive claims. Similarly, a challenge to personal jurisdiction by special appearance, which is a dilatory plea, almost always requires consideration of evidence, and the rules of procedure set out the process for adducing such evidence. While that evidence may touch on the merits of the case, it focuses on the defendant's contacts with the forum, not whether the defendant may be liable as alleged.

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

9

her discharge were "getting worse[]" as time passed.[7]  *Id.*  The trial court denied the plea to the jurisdiction because there was "neither anything on the face of those petitions suggesting nor any evidence in the record proving that the amount in controversy was fraudulently alleged."[8]  *Id.*

Additionally, in *Smith Detective Agency & Nightwatch Service v. Stanley Smith Security*, the appellant filed an original counterclaim requesting "actual damages in an amount not to exceed the maximum jurisdictional limits of the court and not less than $103,642.40."  938 S.W.2d 743, 747 (Tex. App.—Dallas 1996, writ denied).  In its third amended counterclaim, appellant requested "actual damages in an amount not to exceed the maximum jurisdictional limits of the court and not less than $95,000."  *Id.*  The trial court dismissed the appellant's counterclaim for lack of subject matter jurisdiction because appellant's original counterclaim exceeded the court's $100,000 jurisdictional limit. *Id.*  The Dallas Court of Appeals reversed, holding that, "[b]ecause appellant claimed unliquidated damages, it was free to amend its counterclaim to state an amount of damages within the trial court's jurisdictional limits.  It did so in its third amended counterclaim . . . .  Based on the allegations in the third amended counterclaim, the trial

---

[7] "If a plaintiff's original petition is properly brought in a particular court, but an amendment increases the amount in controversy above the court's jurisdictional limits, the court will continue to have jurisdiction if the additional damages accrued because of the passage of time."  *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

[8] The Supreme Court further explained that the fact that the trial court ultimately awarded damages far in excess of its jurisdictional limit did not affect its finding, reasoning:

> This Court has previously voiced its concerns over the difficulties created for the bench, the bar, and the public by the patchwork organization of Texas' several trial courts. As Thomas Paine observed: "The more simple anything is, the less liable it is to be disordered, and the easier repaired when disordered." PAINE, COMMON SENSE, 3 (1776).  This case is yet another confirmation that "confusion and inefficiency are endemic to a judicial structure with different courts of distinct but overlapping jurisdiction." *Camacho v. Samaniego*, 831 S.W.2d 804, 811 (Tex. 1992).

court had subject matter jurisdiction over appellant's counterclaim." *Id.* In *Smith*, even though the court stated that the parties had "thoroughly pursued discovery," the court did not consider whether any of the evidence provided during discovery indicated that the appellant may have been entitled to damages exceeding the amount listed in its amended pleadings; it simply concluded that it agreed that the pleadings were in good faith even though the original pleadings requested specific damages in excess of the court's jurisdictional limit.[9] *Id.*

In the present case, the amount in controversy listed in Williams Farms' pleadings never exceeded the jurisdictional limit, and the trial court specifically found that there was no fraud and that R&G's pleadings were not a sham. The trial court had discretion to make a factual determination on whether R&G filed sham pleadings and determine whether it had jurisdiction over the case. *See Bland*, 34 S.W.3d at 554. While we recognize that Texas courts envision a scenario where a trial court could find that it lacked jurisdiction because the amount in controversy listed in pleadings is a sham, no case law indicates that the mere existence of evidence in the record that suggests the plaintiff incurred damages in excess of its pleadings constitutes a sham.[10] *See id*; *Cazarez*, 937

---

[9] Williams Farms extensively cites *French v. Moore*, which states that if a party alleges an amount of damages exceeding the trial court's jurisdiction, it may amend its pleadings to "reduce its unliquidated claim for damages to an amount that party pleads in good faith." 169 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2004, no pet.). First, we note again that this point of law refers to circumstances where pleadings have been reduced in a subsequent amendment. Second, *French* merely generally restates the law cited in this opinion that pleadings must not list a sham amount in controversy. In any event, the *French* court did not apply the good faith rule or make any finding on whether the pleadings were a sham as it found that the appellant had stipulated to an amount in controversy within the trial court's jurisdictional limit and was therefore estopped from arguing on appeal that the amount exceeded the jurisdictional limit. *Id.* at 18.

[10] Appellant does cite *Taylor v. Buzan*, which reversed a trial court's finding that it had jurisdiction because it held that the plaintiff had amended his pleadings within the court's jurisdictional limit "for the purpose of reducing his claim for recovery from above to within the jurisdictional amount. In other words, he sought to remit a sufficient amount of his damages to enable him to get into court." 241 S.W. 1084 (Tex. Civ. App.—San Antonio 1922, no writ). However, in *Taylor*, unlike the present case, the court based its decision on the fact that the plaintiff had originally pleaded in excess of the court's jurisdictional limit; the

11

S.W.2d at 449; *Smith*, 938 S.W.2d at 747. We therefore cannot find that the trial court abused its discretion by determining that it had jurisdiction. For the foregoing reasons, Williams Farms' first issue is overruled.

### III. PASSAGE OF TIME DAMAGES

In its second issue, Williams Farms argues that the amount in controversy exceeded the trial court's jurisdictional limit because the increase in R&G's amended pleadings was not due to the passage of time. See *Cazarez*, 937 S.W.2d at 449 ("If a plaintiff's original petition is properly brought in a particular court, but an amendment increases the amount in controversy above the court's jurisdictional limits, the court will continue to have jurisdiction if the additional damages accrued because of the passage of time."). However, Williams Farms is not entitled to a reversal of the trial court's judgment on this basis because we have determined that the increase, regardless of whether it was due to the passage of time, never exceeded the court's jurisdictional limit. *See id.*; *Smith*, 938 S.W.2d at 747. Williams Farms' second issue is therefore overruled.

### IV. CONCLUSION

We affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of January, 2014.

---

court never considered the plaintiff's specific evidence of damages. *See id.* Moreover, this case was decided in 1922, far before the Supreme Court's decisions in *Bland* and *Cazarez*. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Cont'l Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).