COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| MARIA LOURDES RODRIGUEZ, | § | No. 08-07-00269-CV |
| Appellant, | § | Appeal from |
| v. | § | 205th District Court |
| DUNCAN M. CROWELL, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 2005-1142) |
|  | § |  |

## **O P I N I O N**

This appeal involves a latent occupational disease claim involving a bacterial infection known as psitticosis. Psittacosis can be transmitted to humans from birds such as pigeons, parrots, parakeets, chickens, and turkeys. Transmission generally occurs when humans inhale infected particles from bird droppings. Such is the case here, and pigeons were the carriers.

Maria Lourdes Rodriguez filed suit against Duncan M. Crowell under legal theories of negligence and premises liability. The trial court granted Crowell's motion for summary judgment based on a limitations defense and denied Rodriguez's motion for leave to amended her pleadings. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

Maria Rodriguez worked for the Texas Department of Human Services for twelve years. She terminated her employment in late 2003 upon her doctor's instructions. She began working at the office building in question around 1995. A year or two later, she started experiencing shortness of breath and a general feeling of malaise. A physician treated her for depression, but her respiratory difficulties continued. She noticed that she couldn't dance and she couldn't walk. She also suffered

from seizures beginning in May 2001. She consulted a neurologist, Dr. A.B. Baca, and visited the Barrow Neurology Clinic in the summer of 2002. While the cause of the seizures remained undetermined, Rodriguez took medication for her symptoms between 2001 and 2003.

Rodriguez began to notice that her health condition improved whenever she left the building. She volunteered for assignments to travel out of town because she felt ill at her assigned workplace. The record indicates that this general feeling dated back to 1997. Finally at some point in 2003, she presented to Dr. Ambrose Aboud. By July 11 of that year, Dr. Aboud had diagnosed her with psittacosis based on a history of shortness of breath and a biopsy of a nodule in her lung. No other doctor has ever diagnosed Rodriguez with a work-related condition, and no physician – not even Dr. Aboud – has attributed the seizure disorder to psittacosis.

Rodriguez admittedly noticed pigeons all around her office building, including the break area. She told Dr. Aboud that the birds roosted in the building between the ceiling and the roof. Over the years, there was a consistent presence of dust and debris filtering down from the ceiling of her workplace. She was also aware that co-workers were complaining about air quality in the building and that emails were circulated concerning "air quality issues". She customarily deleted them thinking that they addressed the air quality outside of the building. On March 5, 2002 Rodriguez received a specific email from the State of Texas regarding employment health concerns and workers' compensation procedures.

Rodriguez filed suit on February 18, 2005 against Yandell Office Partnership, E.I.C. Co., and Prima Corporation, Inc. Also named as defendants were Bruce Meyer, Douglas Crowell, and Charles Hammond, individually and doing business as either Yandell Office Partnership or E.I.C. Rodriguez also joined the estates or the heirs of three deceased individuals who had allegedly done business as Yandell Office Partnership or E.I.C. It was on this basis that Appellee Duncan Crowell

was sued as the heir of Robert Crowell, deceased. All of the other defendants were eventually non-suited and Crowell remained as the sole defendant. Summary judgment was granted in his favor on June 28, 2007.

## PROPRIETY OF SUMMARY JUDGMENT

### *Standard of Review*

The standard of review for traditional summary judgment is well established. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex. 2005); *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148 S.W.3d 94, 99 (Tex. 2004); *Duran,* 921 S.W.2d at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id.*; *Duran,* 921 S.W.2d at 784.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.,* 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

*Statute of Limitations*

A plaintiff must commence a suit for personal injuries within two years after the day the cause of action accrues. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 16.003(a)(Vernon Supp. 2009). Because the accrual date is not defined by statute, the courts are charged with the responsibility of articulating the rules governing accrual. *See, e.g., S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996); *see also Developments in the Law: Statutes of Limitations,* 63 HARV. L.REV. 1177, 1185 (1950). In most cases, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or whether all resulting damages have yet to occur. *See S.V.,* 933 S.W.2d at 4. However, in those rare cases when the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable," the Texas Supreme Court applies a judicially crafted exception to the general rule of accrual, known as the discovery rule. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex. 1996). Under this rule, a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, "should have known of the wrongful act and resulting injury." *S.V.,* 933 S.W.2d at 4, *citing Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex. 1994)). Once these requirements are satisfied, limitations commence even if the plaintiff does not know the exact identity of the wrongdoer. *See, e.g., Russell v. Ingersoll-Rand Co.,* 841 S.W.2d 343, 344 n.3 (Tex. 1992); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990).

The Texas Supreme Court applied these rules and principles to latent occupational diseases in the two companion cases of *Childs v. Haussecker* and *Martinez v. Humble Sand & Gravel*, which were decided together and are reported at 974 S.W.2d 31, 36 (Tex. 1998). Both cases involved silicosis, a latent occupational disease. *Id*. The court stated the summary judgments would only be proper if the movants negated the discovery rule by establishing that no genuine issue of material

fact existed concerning when the non-movants experienced symptoms for a degree or for a duration that would have put a reasonable person on notice that he suffered from some injury and he discovered or, in the exercise of reasonable diligence should have discovered, the likely casual connection between the symptoms and the occupational exposure. *Id*. The commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record. *Id*.

*The Facts of Childs v. Haussecker*

Joseph Haussecker was a sandblaster by trade and began working for AMF Tuboscope in 1961. In 1967, Haussecker visited his family doctor and complained about shortness of breath, wheezing, coughing, and spitting up blood. He was prescribed medication for the wheezing. When he consulted his physician the next year, he was told he suffered problems with his prostate gland. His prolonged fever and cough was attributed to lymphoma or Hodgkin's disease. In June 1968, a lung specialist performed a bronchoscopy and diagnosed a granuloma of the right lung. Both the family physician and the lung specialist specifically told Haussecker his condition was not work-related. Over the next ten years, his health deteriorated. He stopped working in 1978 and began receiving social security disability. In 1988, a second lung specialist suspected Haussecker had silicosis. A lung biopsy in 1990 confirmed the diagnosis.

In its opinion, the Supreme Court noted that Haussecker knew he was injured long before 1988. *Childs*, 974 S.W.2d at 44. While he might not have known the precise nature of the injury, his prolonged and progressively debilitating symptoms indicated a serious condition. *Id.* But the court questioned at what point Haussecker connected or reasonably should have connected his symptoms to his work environment. *Id.* at 45. He had diligently attempted to ascertain the cause of his health problems by consulting several doctors, all of whom told him his condition was not

work-related. On the other hand, Haussecker knew that several of his co-workers had respiratory health problems similar to his, including one who died of silicosis. In fact, Haussecker filed a worker's compensation claim alleging he had silicosis. Additionally, one of his doctors advised him not to return to his workplace. *Id.* at 45-46.

The court held that when medical experts consistently reject a layperson's suspicions by expressly refuting an occupational connection or by exclusively suggesting causes that are not work-related, a fact question ordinarily arises about what a plaintiff should reasonably know and what further action the plaintiff should have taken, even if the plaintiff knows that co-workers suffer from similar symptoms. Because reasonable minds could differ as to when Haussecker knew or should have known through the exercise of reasonable diligence about a likely casual connection between his symptoms and his occupational exposure, the defendant was not entitled to judgment as a matter of law based on limitations. *Id.* at 46.

### The Facts of Martinez v. Humble Sand & Gravel

Jose Martinez also worked as a sandblaster from 1978 until 1984. In 1989, he filed a workers' compensation claim for "a lung disease arising out of an in the course of his employment." On the claim form, he stated that the disease first manifested a month earlier. He admitted in his deposition that the claim was merely a precaution because while he was experiencing only minor problems, his brother had been diagnosed with silicosis four years earlier. Martinez first consulted a doctor in September 1990. Dr. Wiesenfield recommended a biopsy, but Martinez could not afford it. The procedure was performed a year later and Martinez was diagnosed with silicosis. He filed suit in 1992.

In its opinion, the Supreme Court faulted Martinez for not diligently seeking medical treatment for a year after his breathing problems first appeared. *Martinez*, 974 S.W.2d at 47. But

Humble Sand offered no evidence that a diligent investigation would have led Martinez to discover his occupational illness before 1990. It thus concluded that a fact question remained with respect to whether Martinez knew or should have known through the exercise of reasonable diligence that his injury was likely work-related before 1990.

*Articulation of the Rule*

In the *Childs* and *Martinez* companion cases, the Supreme Court articulated the rule to be applied in the context of latent occupational diseases:

> We therefore hold that the approach that best balances the interests implicated in latent occupational disease cases is one that defers accrual until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related. Thus, in cases involving latent occupational diseases, 'discovery of the injury' should not be equated with a plaintiff's discovery (1) of the precise name of the disease that is causing his symptoms or (2) that the disease is permanent. The seriousness of a personal injury need not be fully apparent or even fully developed in order to commence the statute of limitations.

*Childs*, 974 S.W.2d at 40-41. The accrual of a cause of action is not dependant on a confirmed medical diagnosis because a plaintiff whose condition has not yet been affirmatively diagnosed by a physician can have or, in the exercise of reasonable diligence could have, access to information that requires or would require a reasonable person to conclude she likely suffers from a work-related illness. *Id*. at 42. Even if the plaintiff lacks such information, her cause of action will accrue if the absence of due diligence is responsible for the deficiency. *Id*. On the other hand, "a latent occupational disease cause of action should not be deemed to accrue absent some objective verification of a casual connection between injury and toxic exposure, provided that the failure to obtain that verification is not occasioned by a lack of due diligence." *Id*. at 43. Therefore, a diligent plaintiff's mere suspicion or subjective belief that a casual connection exists between his exposure

and his symptoms is insufficient to establish accrual as a matter of law. *Id.*

*Analysis*

Rodriguez argues that her claim accrued in July 2003 when Dr. Aboud diagnosed the psitticosis. She contends that the evidence shows that she became ill at work and only attributed it to her exposure to the bird droppings in hindsight. She sought medical treatment in 2002, but no cause was determined. And she maintains that prior to Dr. Aboud's diagnosis in 2003, no other physician ever connected her medical condition to her workplace environment. Finally, she argues that the emails circulated to employees did not put her on alert that the external bird waste was causing employees to have respiratory problems. Given the summary judgment evidence, she concludes that reasonable minds could differ about when she knew or should have known through the exercise of reasonable diligence about the likely casual connection between her symptoms and her occupational exposure.

Crowell responds that the record clearly reflects that Rodriguez felt ill and suffered shortness of breath, a symptom of psittacosis, since at least 1996 or 1997. Her symptoms were severe enough that she went to a doctor and was diagnosed with depression, another symptom related to psittacosis. She knew before early 2002 that her co-workers were complaining about air quality issues. She was aware that her employer sent emails directing the employees to seek medical attention and instructing them how to file worker's compensation claims. Moreover, Rodriguez suspected her physical problems were related to her workplace since the late 1990's and she purposefully sought out of town assignments.

We agree with Crowell. Viewing the evidence in Rodriguez's favor, the record establishes that her symptoms manifested to a degree and for a duration that would put a reasonable person on notice that she had been injured and that she knew or should have known that the injury was likely

work-related. While her physicians did not deliver an ultimate diagnosis of psitticosis until 2002, the law does not require a final diagnosis. *Childs*, 974 S.W.2d at 42. The evidence demonstrates that Rodriguez had more than a mere subjective belief and had both reason to believe and objective verification that she had been injured no later than March 2002. Because she waited more than two years after her cause of action accrued, her claim is barred by limitations. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 16.003(a). We overrule Point of Error One.

## SPECIAL EXCEPTIONS AND MOTION FOR LEAVE

Rodriguez filed her petition on February 18, 2005. On July 11, 2006, Crowell filed his first amended answer which contained a verified denial, affirmative defenses, and special exceptions. He specifically claimed "there is no viable cause of action plead against Duncan M. Crowell" and asked the court to require Rodriguez to amend her pleadings so as to state a cause of action against him. On April 4, 2007, Crowell filed a motion for summary judgment claiming that Rodriguez's lawsuit was barred by the two-year statute of limitations. He also alleged that her live petition lacked specific allegations against him.

At the hearing, the trial court delayed ruling on the merits of the motion for summary judgment and asked the parties for additional briefing regarding numerous issues. One of the matters Rodriguez briefed was the propriety of special exceptions in the context of a summary judgment proceeding. Contemporaneous with the filing of her trial brief, Rodriguez filed a motion for leave to amend her pleadings. The trial court granted summary judgment and denied Rodriguez's motion for leave to amend.

Rodriguez brings three points of error related to Crowell's special exceptions and the trial court's denial of her motion for leave to amend. In Point of Error Two, she claims Crowell waived his special exceptions by not obtaining a written order such that they cannot serve as the basis of

either the summary judgment relief granted by the trial court or the court's rejection of her efforts to plead her cause with more specificity. But there is no evidence in the record to support her assertion that the trial court relied on the special exceptions to grant the motion for summary judgment. The final order is silent as to the grounds for granting the summary judgment. Where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed on appeal if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Here, the trial court could have relied on the running of the statute of limitations to grant summary judgment. We overrule Point of Error Two. We overrule Point of Error Three for the same reason. Rodriguez suggests that the trial court abused its discretion in dismissing her suit based on insufficient pleadings without allowing her an opportunity to amend. Once again, the final order does not support her assumption that the trial court granted summary judgment based on her failure to state a claim.

Finally, in Point of Error Four, Rodriguez avers that the trial court abused its discretion by denying her motion for leave to amend her pleadings. We review the court's ruling for an abuse of discretion. *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex. 1994). A court has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or prejudice, or the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex. 1990), *citing Hardin v. Hardin,* 597 S.W.2d 347, 350-51 (Tex. 1980). The burden of showing prejudice or surprise rests on the party resisting the amendment. *Greenhalgh,* 787 S.W.2d at 939. An amendment is mandatory if it is merely procedural in nature such as conforming the pleadings to the evidence at trial. *Stephenson v. LeBoeuf,* 16 S.W.3d 829, 839 (Tex.App.--Houston [14th Dist.] 2000, pet. denied), *citing Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,*

844 S.W.2d 664, 665 (Tex. 1992). An amendment is not mandatory if it changes the nature of the trial. *See Chapin,* 844 S.W.2d at 665. A proposed trial amendment that asserts a new cause of action may be prejudicial on its face, but this does not make it prejudicial as a matter of law. *LeBoeuf,* 16 S.W.3d at 839. The amendment must be evaluated in the context of the entire case. *Id.* To be prejudicial, the amendment must reshape the nature of the trial, the opposing party could not anticipate it in light of the development of the case up to the time the amendment was requested, and the opposing party's presentation of the case would be detrimentally affected by the filing of the amendment. *Id.* The question is not whether the opposing party did in fact anticipate it, but rather whether it could have been anticipated. *Id.* It is well established that a party may amend its pleading after verdict but before judgment. *Greenhalgh,* 787 S.W.2d at 940.

While Crowell made no showing of surprise or prejudice, the amendment would have no impact on the running of the statute of limitations. Had Rodriguez amended the petition to include new claims not subject to a similar statute of limitations, then Crowell would be able to clearly demonstrate both surprise and prejudice. *See Greenhalgh,* 787 S.W.2d at 939, *citing Hardin,* 597 S.W.2d at 350-51. We overrule Point of Error Four and affirm the judgment of the trial court.

December 22, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.