**Reversed and Rendered in part, Affirmed in part, and Opinion Filed September 7, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-01506-CV**
_____

**BENGE GENERAL CONTRACTING, LLC AND JAMES BENGE,**
**Appellants**
**V.**
**HERTZ ELECTRIC, LLC AND HTJ GLOBAL ELECTRIC, LLC, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-03630**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Partida-Kipness, and Justice Garcia
Opinion by Justice Partida-Kipness

Appellants appeal an adverse judgment on claims and counterclaims arising from commercial services contracts. In five issues, appellants contend the trial court erred in awarding attorney's fees, allowing a trial amendment of appellees' counterclaims, awarding both contract and tort damages, granting summary judgment on appellants' implied-warranty claim, and granting directed verdict on appellants' breach-of-contract claim. We reverse the trial court's judgment regarding attorney's fees and affirm the remainder of the trial court's judgment.

## BACKGROUND

Appellant Benge General Contracting, LLC (BGC) hired appellees Hertz Electrical, LLC (Hertz) and HTJ Global Electric, LLC (HTJ) to perform electrical work on several commercial sites in North Texas. Appellees submitted single-page bids containing a bullet list of included and excluded tasks or items for each site. When identifying some of the included tasks or items, the bids refer to "plans" and, in one case, "specs." BGC's owner James Benge approved the proposals and stamped BGC's terms of acceptance on the documents. The stamped terms state, among other things:

> Acceptance of your bid/proposal and beginning work constitutes a binding contract. All work is to be completed with quality and in a reasonable time. Benge General Contracting reserves the right to adjust the schedule accordingly.

Two of the contracts also include a stamp, stating:

> BEGINNING WORK WITH THIS RELEASE, YOU CONFIRM YOU ARE ADHERING TO THE PLANS AND SPECIFICATIONS. ANY DEVIATIONS MUST BE APPROVED IN WRITING. YOU ALSO CONFIRM THAT ALL CHANGE ORDERS MUST BE SIGNED BY A PROJECT MANAGER OR THE DIRECTOR OF OPERATIONS. SUPERINTENDENTS AND CUSTOMERS ARE NOT AUTHORIZED TO MAKE CHANGES TO THE PLANS THAT RESULT IN FINANCIAL INCREASES.

Appellees began working on each site between August and November of 2015. Appellees completed all work they understood was required under the contracts. The record reflects that where city inspection was required, appellees'

work received a "green tag," indicating the work passed inspection. Benge partially paid appellees for their services.

BGC contends, however, that it later learned that appellees had failed to perform the work competently. After hiring other electrical contractors to repair appellees' allegedly shoddy work, BGC filed suit against appellees on March 29, 2016. BGC alleged that appellees "failed to perform their duties in a good and workmanlike manner" and brought claims for breach of contract, money had and received, and unjust enrichment. BGC also sought attorney's fees. BGC filed an amended petition adding an allegation that Hertz and HTJ were merely alter egos for their owner, Joel Dennie.

Appellees answered and filed counterclaims. Appellees specifically alleged that BGC failed to pay all that was owed to appellees and their subcontractors and suppliers. Appellees further alleged that BGC had attempted to harm appellees' business relationships by making allegedly false and disparaging remarks regarding Dennie to appellees' existing and potential clients. Thus, appellees brought counterclaims for breach of contract and business disparagement. Appellees also alleged that BGC committed fraud when Benge forged Dennie's signature on an Unconditional Final Waiver of Lien associated with one of the contracts. Appellees sought to make Benge liable for the fraudulent act by alleging that BGC was merely Benge's alter ego. Appellees also sought attorney's fees.

Appellees moved for no-evidence and traditional summary judgment on all of BGC's claims. Appellees also moved for leave to add Benge as a party to the lawsuit. Appellees based their motion for leave on the deposition testimony of Joshua McDowell, BGC's former Director of Operations, in which McDowell described conduct by Benge that supported appellees' alter-ego claim. The trial court granted appellees' summary judgment motion in part, dismissing BGC's claims against Dennie and BGC's claims for money had and received and unjust enrichment against Hertz and HTJ. The trial court denied appellees' motion as to BGC's breach-of-contract claim and attorney's fees. The trial court also granted appellees' motion for leave to add Benge as a party. Appellees filed amended counterclaims to include Benge as a third-party defendant.

BGC filed a third amended petition, modifying its breach-of-contract claim and adding claims for breach of implied warranty and fraud. As to its breach-of-contract claim, BGC alleged that appellees "failed to perform most of the agreed items, failed to perform others correctly, and did not perform any work timely." The newly asserted claim for breach of implied warranty contained allegations previously stated in support of BGC's breach-of-contract claim. Namely, BGC alleged that appellees failed to perform their services "in a good and workmanlike manner." BGC alleged in its fraud claim that appellees fraudulently misrepresented that they had paid subcontractors and suppliers and that they were capable of completing the contracted work "timely and in a good and workmanlike manner."

–4–

Appellees moved for no-evidence summary judgment on BGC's newly asserted claims. Regarding BGC's implied-warranty claim, Appellees argued that BGC had no evidence that it had no other remedy available or that appellees failed to perform the contracted services. Appellees also argued that BGC had no evidence of any element of its fraud claim. BGC filed a response, asserting that appellees had improperly added an element to the implied-warranty claim. Specifically, BGC argued that it did not need to prove it had no other remedy to prevail on this claim. BGC then cited 344 pages of documents, including Benge's affidavit, as evidence that appellees failed to perform in a good and workmanlike manner. The trial court granted appellees' motion and dismissed BGC's implied-warranty and fraud claims.

The parties proceeded to trial on BGC's claims for breach of contract and attorney's fees and appellees' counterclaims for breach of contract, fraud, alter ego, business disparagement, and attorney's fees. At the close of BGC's evidence, appellees moved for a directed verdict on BGC's breach-of-contract claim. The trial court granted appellees' motion.

At the close of appellee's evidence, BGC moved for a directed verdict on appellees' fraud claim on the ground that it was not "a broad form of fraud." According to BGC, there was no evidence of conspiracy between Benge and BGC to forge Dennie's signature on a lien waiver. BGC also asserted that there was no evidence that Benge communicated with McDowell with intent to harm appellees' business relationships or that Benge used BGC as an alter ego to protect himself

from fraudulent activities. BGC asserted that Benge's communications with McDowell concerned use of "money from these jobs to pay for [Benge's] wife's vacations and things like that; however there was no evidence to tie any of those alleged very general allegations to any damage to Mr. Dennie."

Appellees opposed BGC's motion, arguing the lien releases were not enforceable because they were obtained on "a false promise to eventually pay those invoices in full." Appellees also argued there was evidence of fraud in the form of McDowell's testimony that Benge would "use funds for one project that Mr. Dennie was working on to pay other projects" and "personal expenses." According to appellees, Dennie would not have entered into the contracts with BGC if he had known this. Appellees admitted there was no evidence of forgery but noted the other evidence of fraud. Thus, appellees moved to amend their petition consistent with this other evidence.

The trial court granted appellants' motion for directed verdict as to appellees' business disparagement claim and appellees' motion to amend their petition. Appellees filed their fourth amended petition, modifying their fraud claim to allege that Benge misappropriated project funds and falsely represented that BGC would pay appellees in exchange for lien waivers, and that they relied on BGC's misrepresentations when signing the lien waivers.

The jury returned a verdict for appellees on their breach of contract and fraud claims and found for appellees on their request for attorney's fees. The jury also

–6–

found that Benge was using BGC as his alter ego in perpetrating a fraud on appellees. The trial court entered a judgment consistent with the jury's findings. BGC filed a motion for new trial. The trial court denied the motion, and this appeal followed.

## ANALYSIS

In five issues, appellants contend the trial court erred in (1) awarding appellees attorney's fees against BGC; (2) allowing a trial amendment to appellees' petition; (3) failing to require appellees to elect tort or contract damages; (4) granting no-evidence summary judgment on BGC's breach-of-implied-warranty claim; and (5) granting directed verdict on BGC's breach-of-contract claim. We address each issue in order.

### I. Attorney's Fees

Appellants contend that the trial court erred in making both BGC and Benge liable for attorney's fees. According to appellants, Texas law prohibits awarding attorney's fees against a limited liability company. Thus, neither BGC nor, by extension, Benge could be liable for attorney's fees. Appellees contend, however, that the jury's alter-ego finding permits such an award. We agree with appellants.

Appellees sought attorney's fees under chapter 38 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. Code § 38.001. We review an award of attorney's fees under the statute for an abuse of discretion. *Avila v. Larrea*, 506 S.W.3d 490, 494 (Tex. App.—Dallas 2015, pet. denied). A trial court abuses its discretion if it acts without reference to guiding rules and principles. *Id*.

Texas follows the American Rule, under which litigants may recover attorney's fees only if specifically allowed by statute or contract. *See Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011); *Phoneternet, LLC v. Drawbridge Design*, No. 05-17-00890-CV, 2018 WL 3238001, at *2 (Tex. App.—Dallas July 3, 2018, no pet.) (mem. op.). Section 38.001 authorizes an award of attorney's fees for certain types of claims brought by a "person" against "an individual or corporation." *See* TEX. CIV. PRAC. & REM. CODE § 38.001.[1] Under the plain language of section 38.001, a trial court cannot order limited liability partnerships (LLP), limited liability companies (LLC), or limited partnerships (LP) to pay attorney's fees. *See Phoneternet, LLC*, 2018 WL 3238001, at *2 (section 38.001 does not permit recovery against an LLC); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452–55 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (same). The availability of attorney's fees under a particular statute is a question of law for the court. *See Fleming & Assocs., L.L.P. v. Barton*, 425 S.W.3d 560, 574 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Appellants argue that the trial court could not order BGC to pay attorney's fees under section 38.001 because BGC is an LLC. The parties do not contest BGC's status as an LLC. Appellants further argue that the trial court was also prohibited

---

[1] The Texas Legislature amended section 38.001 effective September 1, 2021. Those amendments apply to "an action commenced on or after the effective date of the Act." Act of June 15, 2021, 87th Leg., R.S., H.B. 1578, § 1 (to be codified at TEX. CIV. PRAC. & REM. CODE § 38.001). This lawsuit was filed on March 29, 2016. Thus, the prior version of the law applies to this action, and all references to section 38.001 herein are to the prior version.

from ordering Benge to pay attorney's fees. According to appellants, if BGC cannot be liable for attorney's fees, and BGC is Benge's alter ego, then, by extension, Benge also cannot be liable for attorney's fees.

Appellees contend, however, that it would be unfair to allow Benge to get the benefit of an LLC that was "a mere 'corporate fiction' and illusory for liability purposes." Although there is a logical appeal to appellees' argument, appellees cite dicta from only one federal case to support their argument. *See Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1295 (5th Cir. 1988) ("If we were to uphold the 'alter ego' finding, LDBrinkman Corp. might be liable for attorneys' fees as if it were a contractual maker or guarantor of the note. Because such liability was not established, we express no opinion on whether disregard alone would activate section 38.001 and entitle Gibraltar to attorneys' fees." (internal citations omitted)). Appellees also cite authority establishing that the alter-ego theory permits piercing the corporate veil of an LLC to hold members liable for an LLC's debts. Appellees, however, do not cite any authority applying this doctrine to attorney's fees. Absent mandatory, or at least persuasive, authority applying the alter-ego theory to hold an LLC's members liable for attorney's fees that could not be incurred by the LLC, we must abide by the plain statutory language. Accordingly, we conclude that the trial court abused its discretion in awarding attorney's fees, and we sustain appellants' first issue.

## II. Trial Amendment

In their second issue, appellants contend the trial court erred in allowing appellees to amend their petition during trial. According to appellants, the amendment stated a new cause of action for fraud by omission that was unsupported by the evidence and "extremely prejudicial" to appellants. Appellees contend, however, that the amended fraud claim was supported by testimony previously offered at trial and served merely to conform the pleadings to the evidence. We agree with the appellees.

Under rule of civil procedure 66, a trial court is required to freely grant a request to amend pleadings during trial unless the opposing party presents evidence the amendment would prejudice that party in maintaining an action or defense on the merits. TEX. R. CIV. P. 66; *see also State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) (per curiam). The trial court must allow an amendment to a pleading if it is merely procedural in nature, such as conforming the pleadings to the evidence at trial. *Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992) (per curiam); *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 498 (Tex. App.—Dallas 2010, pet. denied). An amendment is not mandatory, however, if it asserts a new substantive matter that reshapes the cause of action. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *see also Chapin*, 844 S.W.2d at 665; *Hampden Corp.*, 331 S.W.3d at 498. If the amendment is not mandatory, the trial court has discretion to allow the amendment. *Kilpatrick*,

874 S.W.2d at 658; *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). We will reverse the trial court's decision to allow an amendment only if the trial court clearly abused its discretion. *Kilpatrick*, 874 S.W.2d at 658; *Stephenson*, 16 S.W.3d at 839.

"Under Rules 63 and 66 a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice, or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Greenhalgh*, 787 S.W.2d at 939 (internal citations omitted); *see also Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 783–84 (Tex. App.—Dallas 2015, no pet.); *Rodriguez v. Crowell*, 319 S.W.3d 751, 758–59 (Tex. App.—El Paso 2009, pet. denied). Merely asserting a new cause of action, however, does not make an amendment prejudicial to the opposing party as a matter of law. *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex. App.—Dallas 1996, writ denied); *Rodriguez*, 319 S.W.3d at 759. We must evaluate the amendment in the context of the record of the entire case. *Smith Detective Agency*, 938 S.W.2d at 749; *Rodriguez*, 319 S.W.3d at 759. An amendment is prejudicial on its face if, viewed in the context of the record, (1) it asserts a new substantive matter that reshapes the cause of action or the nature of the trial, (2) the opposing party could not have anticipated the amendment in light of the prior development of the case, and (3) the amendment would detrimentally affect

the opposing party's presentation of the case. *Smith Detective Agency*, 938 S.W.2d at 749; *Rodriguez*, 319 S.W.3d at 759. An additional cause of action may not be a new substantive matter if it has common elements with previously pleaded matters and the evidentiary proof required to support it is the same for an already pleaded cause of action. *Smith Detective Agency*, 938 S.W.2d at 749 (citing *Kilpatrick*, 874 S.W.2d at 658).

Appellees alleged in their third amended counterclaim, their live pleading at time of trial, that Benge and BGC "conspired to fabricate an Unconditional Final Waiver of Lien with an electronically forged signature of Joel Dennie." This allegation formed the basis of appellees' claim that appellants "committed actual fraud." No evidence of this alleged conspiracy was introduced by either party. Appellees admitted this fact during argument on appellants' motion for a directed verdict. Evidence of other fraudulent acts, however, was introduced. Appellees specifically cited McDowell's testimony that Benge "used money from these jobs to pay for his wife's vacations and things like that." Appellees cited other testimony by McDowell that Benge used funds intended for one of appellees' projects to fund other projects to appellees' detriment.

McDowell testified that as the director of operations, he knew where project funds were used. As to one project, McDowell testified, "We very oftentimes didn't have funds, so when funds came in they were used to pay various bills, contractors, taxes, payroll." He testified further that "it was a practice on that job to make payroll

and to pay [Benge's] wife's credit card, among other things, with the funds that we received." McDowell confirmed that Benge handled the funds on eight other projects in a similar fashion, indicating that "[t]he funds were used for a variety of different things, including personal expenses, . . . used for [Benge's] wife's business, [Benge's] credit cards, [Benge's] wife's credit cards, vacations, [and] contract payments." He also testified that the money at issue should have been paid to appellees, and that Benge had a practice of making subcontractors, such as appellees, sign lien waivers before being paid. Appellees also cited Dennie's testimony that Benge promised full payment when asking Dennie to execute the lien waivers. According to appellees, Dennie would not have executed the lien waivers if he had known that Benge had been improperly diverting project funds.

Appellees contend that this evidence supported a broad-form fraud claim, and appellees asked the trial court for leave to amend their counterclaims. Appellants did not object that they would be surprised or prejudiced by such an amendment but merely restated their request for a directed verdict on the appellees' original claim regarding the allegedly forged signature. On appeal, appellants contend the amendment was improper because there is no evidence that they had a duty to disclose information regarding Benge's use of projects funds to appellees. Appellants did not raise this objection to the trial court, and thus did not preserve the issue for appeal. TEX. R. APP. P. 33.1(a); *see also* TEX. R. EVID. 103(a)(1).

Considering that the evidence giving rise to appellees' motion for leave to amend was presented before the motion, and even highlighted by appellants during argument on their motion for directed verdict, we conclude the appellants failed to demonstrate that they could not anticipate the amendment to appellees' counterclaims. *See Smith Detective Agency*, 938 S.W.2d at 749. Appellants likewise failed to establish, or even object, that they were prejudiced by the amendment. *Greenhalgh*, 787 S.W.2d at 939. Rather, the record reflects that the amendment was procedural in nature, merely conforming the pleadings to the evidence at trial. *See Chapin & Chapin, Inc.*, 844 S.W.2d at 665. Thus, the amendment was mandatory, and the trial court had no discretion to disallow it. *See Kilpatrick*, 874 S.W.2d at 658. Accordingly, we overrule appellants' second issue.

## III. Election of Remedies

In their third issue, appellants contend the trial court erred in allowing appellees to recover on both their contract and tort claims. According to appellants, appellees should be required to elect their remedy because both claims arise from the same events. We disagree.

A party is generally entitled to pursue damages through alternative theories of recovery. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam); *Toyota Motor Sales, U.S.A., Inc. v. Reavis*, No. 05-19-00075-CV, ___ S.W.3d ___, 2021 WL 2253535, at *10 (Tex. App.—Dallas June 3, 2021, no pet. h.). "[A] judgment awarding damages on each alternate theory may

be upheld if the theories depend on separate and distinct injuries and if separate and distinct damages findings are made as to each theory." *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 64 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Under the one-satisfaction rule, however, a plaintiff may recover only once for a particular injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Allan v. Nersesova*, 307 S.W.3d 564, 574 (Tex. App.—Dallas 2010, no pet.). The rule applies when a defendant commits technically differing acts that result in a single injury. *Casteel*, 22 S.W.3d at 390; *Allan*, 307 S.W.3d at 574. The fact that there may be more than one theory of liability does not modify this rule. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex.1991); *Allan*, 307 S.W.3d at 574. Whether the rule applies is determined not by the cause of action, but by the injury. *See Sterling*, 822 S.W.2d at 7–8.

Although not expressly stated, appellants essentially argue that the trial court should have applied the one-satisfaction rule to appellees' breach-of-contract and fraud counterclaims because they both alleged the same injury: economic loss from appellant's alleged failure to pay for services rendered. In other words, appellants contend that appellees have alleged only an economic loss. Generally, "a party may not recover in tort for purely economic losses suffered to the subject matter of a contract." *James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 365 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415, 418 (Tex.

–15–

2011)). To determine whether this "economic loss" rule applies, we consider "both the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (Tex. 1996)). We look to the substance of the cause of action, not the way it was pleaded, to determine the type of action that is brought. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex. 1986); *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.). "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Clark*, 455 S.W.3d at 289 (quoting *Reed*, 711 S.W.2d at 618).

In some circumstances, however, a party's actions may simultaneously breach duties in contract and tort. *Reed*, 711 S.W.2d at 618. Generally, to maintain a separate tort claim, the plaintiff must show an injury independent from the economic losses recoverable for breach of contract. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (per curiam). Thus, the economic-loss rule has been applied to bar negligence and products liability claims when the alleged injury was also the subject-matter of a contract, *see Sharyland Water Supply*, 354 S.W.3d at 417–18, it has not been extended to bar recovery for fraudulent inducement claims, *see Formosa Plastics Corp.*, 960 S.W.2d at 47.

Here, appellees brought counterclaims for both breach of contract and fraud based on appellants' alleged failure to compensate appellees for their services. Appellees' breach-of-contract counterclaim was based on "enforceable agreements" under which appellees agreed to provide "electrical contracting and painting services at several jobsites in North Texas" in exchange for BGC's promise to compensate appellees for the services. Their fraud counterclaim, as stated in appellees' fourth amended counterclaims, was based on Dennie's reliance Benge's allegedly false representation that he would pay for work performed by appellees "in exchange for the signing of lien releases." Appellees alleged that appellants knew the representations were false when made and omitted facts regarding Benge's misappropriation of project funds otherwise intended to compensate appellees for work performed.

Appellants characterize this counterclaim as fraud by omission and argue there is no evidence a special relationship to support such a claim. *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."). The gravamen of appellees' fraud counterclaim, however, was not that Benge fraudulently omitted information but that he fraudulently induced Dennie to sign lien waivers to obtain a payment he never intended to make; indeed, a payment already owed under the contracts. Thus, appellees stated a claim for fraudulent inducement. *See Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex.

App.—Dallas 2012, no pet.) ("[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.") (citing *Haase v. Glazner*, 62 S.W.3d 798–99 (Tex. 2001)). Accordingly, appellees had a viable fraud claim in addition to their contract claim, and the trial court did not err in awarding both contract damages and damages for fraudulent inducement. *See Formosa Plastics Corp.*, 960 S.W.2d at 47. We overrule appellants' third issue.

## IV. No-Evidence Summary Judgment on Breach-of-Implied-Warranty Claim

In their fourth issue, appellants contend the trial court erred in granting no-evidence summary judgment on their claim for breach of the implied warranty of good and workmanlike performance. Appellees contend, however, that appellants failed to produce more than a scintilla of evidence raising a genuine issue of material fact. Specifically, appellees contend that appellants failed to properly respond to the motion by identifying evidence relating to each element of their claim. We agree with appellees.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX. R.

CIV. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). When, as here, trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

After appellants filed their third amended petition asserting additional claims for breach of implied warranty, negligent misrepresentation, and fraud, appellees filed a motion for no-evidence summary judgment on the new claims. In response, appellants argued, as they do on appeal, that appellees improperly added an element to the implied-warranty claim.[2] According to appellants, appellees improperly interpreted *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998), to require a plaintiff to prove it had no other adequate remedy to sue for breach of an implied warranty of good and workmanlike performance. Appellants contend this requirement applies only to claims under the Deceptive Trade Practices Act (DTPA). Thus, they argued that they need only prove that appellees sold services to appellants; the services consisted of repair or modification of appellants' tangible goods or property; appellees did not perform the services in a good and workmanlike manner; and appellants suffered an injury as a

---

[2] Appellants' response did not address their negligent misrepresentation or fraud claims.

result. *See generally Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438–39 & n.3 (Tex. 1995). We disagree.

Although *Rocky Mountain Helicopters* addressed the question of other adequate remedies in the context of a DTPA claim, this is unremarkable. From its inception, the implied warranty itself has been closely associated with consumer transactions covered by the DTPA. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987) (first recognizing a cause of action for breach of the implied warranty under the DTPA). Despite this close association, there is no indication in *Rocky Mountain Helicopters* that the other-adequate-remedies requirement applies only to DTPA claims. Rather, the supreme court stated only that "[p]ublic policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need" and "[t]here is no compelling need for an implied warranty when other adequate remedies are available to the consumer." *Rocky Mountain Helicopters*, 987 S.W.2d at 53 (citing *Parkway*, 901 S.W.2d at 440).

Indeed, this requirement has been applied outside of the DTPA context. *See, e.g., Irwin v. Nortex Found. Designs, Inc.*, No. 02-08-436-CV, 2009 WL 2462566, at *3 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.) (affirming summary judgment on implied warranty claim arising from home construction defects based on evidence claimant had other adequate remedies through prior settlement); *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691,

–20–

697 (Tex. App.—Eastland 2002, no pet.) (declining to impose the implied warranty on claims arising from allegedly defective repair of airplane fuel tanks discovered by subsequent purchaser because the "economic loss should be restricted to the risk allocations contained within the contracts"). We likewise find no reason to restrict the other-adequate-remedies requirement to DTPA claims. Here, appellants had other adequate remedies as demonstrated by their claims for breach of contract and unjust enrichment, and there is no compelling need to impose an implied warranty in this case. *See Rocky Mountain Helicopters*, 987 S.W.2d at 53. Accordingly, we conclude the trial court did not err in granting summary judgment on appellants' implied-warranty claim. We overrule appellants' fourth issue.

## V. Directed Verdict on Appellants' Breach-of-Contract Claim

In their fifth issue, appellants contend the trial court erred in granting directed verdict on their breach-of-contract claim. Appellees contend, however, the trial court did not err because appellants failed to produce the "exact terms" the parties agreed to and appellees allegedly breached. We agree with appellees.

A directed verdict is proper when the when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Edes v. Arriaga*, No. 05-17-01278-CV, 2019 WL 2266391, at *4 (Tex. App.—Dallas May 24, 2019, no pet.) (mem. op.) ("A directed verdict for a defendant may be proper in three situations: (1) when a plaintiff fails to present evidence raising a fact issue essential

–21–

to the plaintiff's right of recovery; (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (3) a legal principle precludes recovery."). If a question of law provides the basis for the directed verdict, we review the trial court's ruling de novo. *Varel Int'l Indus., L.P. v. PetroDrillbits Int'l, Inc.*, No. 05-14-01556-CV, 2016 WL 4535779, at *4 (Tex. App.—Dallas Aug. 30, 2016, pet. denied) (mem. op.). If a directed verdict rests on the plaintiff's failure to present evidence raising a fact issue essential to its right of recovery or evidence conclusively establishing a defense barring the plaintiff's recovery, we apply a legal sufficiency or "no evidence" standard in our review. *Id*. Thus, with respect to the evidentiary inquiry, the directed verdict was proper on appellants' breach-of-contract claim only if appellants failed to present more than a scintilla of evidence raising a fact question regarding their entitlement to relief. *See Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 619–20 (Tex. App.—Dallas 2010, no pet.).

More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Coastal Transp., Inc. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 234 (Tex. 2004) (internal quotation omitted). In determining whether more than a scintilla of evidence exists, we view the evidence in the light most favorable to the non-movant. *Id*. We credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168

S.W.3d 802, 827 (Tex. 2005). We may affirm a directed verdict on any ground that supports it. *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

At the close of evidence on appellants' claims, appellees moved for a directed verdict on appellants' breach-of-contract claim. Appellees argued that appellants failed to offer any evidence that appellants performed under the contracts or were excused from performance and that they sustained damages from appellees' alleged breach. Appellees asserted that appellants failed to offer any evidence of the "exact terms" agreed upon. Relying on Benge's testimony that the "plans and specifications" defined appellees' duties under the contracts, appellees argued that appellants' contract claims could not be sustained without production of the same, which appellants failed to do. As support for their contention that they performed the work competently, appellees also noted evidence of "green tags," demonstrating passed inspections, and Benge's testimony that "follow[ing] the code" is the primary standard. Finally, appellees asserted that appellants' evidence of work performed by other contractors failed to demonstrate a causal connection between work performed by appellees and appellants' alleged damages.

In response, appellants asserted that evidence of canceled checks and Dennie's signature on the lien waivers demonstrated that appellants performed under the contracts by paying appellees at an agreed, discounted rate. Appellants also

–23–

argued they did not need to produce the "plans and specifications" but could simply rely on the one-page, signed bids, stamped "quality," to show that appellees failed to perform under the contracts. According to Benge, appellees did not perform to a quality standard. Regarding causation, appellants asserted that merely hiring "remedial electricians" was sufficient evidence to show that appellees' alleged failure to perform "quality" work caused appellants' alleged damages. Appellants assert these same arguments on appeal.

Appellants' live petition alleged that appellees "failed to perform most of the agreed items, failed to perform others correctly, and did not perform any work timely" as the bases for appellants' breach-of-contract claim. Thus, to prove their claim, appellants necessarily had to offer proof of the "agreed items." Appellants contend that all of the "agreed items" are within the "four corners" of the signed bids.[3] We disagree.

"Documents incorporated by reference in a contract, become part of that contract." *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 419 (Tex. App.—Dallas 2011, pet. denied) (citing *In re Bank One*, 216 S.W.3d 825, 826 (Tex. 2007) (per curiam) (orig. proceeding)). "[A]ll that is required is that the incorporated document be referenced by name." *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228

---

[3] Appellants point out that appellees' "directed verdict attacks the vagueness of the very contracts they themselves are suing upon." Appellants, however, do not contest the jury's verdict on appellees' breach-of-contract counterclaim.

S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet.) (concluding a "Contract of Sale" was incorporated into broker's representation agreement because it was mentioned six times in the representation agreement and the representation agreement had no purpose without the real estate contract).

The record reflects that all of the contracts at issue refer other documents, none of which were produced at trial. Specifically, all of the contracts refer to "plans" in the itemized list of tasks included in the project—for example, "Rough and Trim electrical per plans" and "Install owner provided light fixtures, per plans." At least one contract also states that the base bid is "[p]er plans[] and specs." At least one other contract reflects appellants' stamp, stating, in part, "YOU CONFIRM YOU ARE ADHERING TO THE PLANS AND SPECIFICATIONS." The contracts' references to "plans," "specs," or "plans and specifications" reflect the parties' intent to incorporate other documents to form the complete contracts. Indeed, Benge testified that these "plans and specifications" were part of the contracts. He also testified that the "plans and specifications" were available at the job site and defined the scope of work to be performed. This is sufficient to demonstrate that the contracts incorporated separate "plans and specifications," that defined the scope of appellees' work. *See Gray & Co. Realtors*, 228 S.W.3d at 436. Yet, appellants failed to produce these documents at trial.

Indeed, the record reflects that, aside from appellees' alleged failure to perform in a good and workmanlike manner, appellants did not offer any evidence

–25–

of any contractual term that appellees allegedly breached. Appellants argue on appeal that the jury could have found that appellees failed to meet this performance standard based on Benge's testimony that appellees did not perform "quality" work. As previously noted, however, appellants' live pleading did not allege a failure to perform in a good and workmanlike manner as a basis for appellants' breach-of-contract claim, and there is no implied warranty to so perform in this context. Accordingly, we conclude appellants failed to present more than a scintilla of evidence raising a fact question regarding their entitlement to relief. *See Halmos*, 314 S.W.3d at 620. We overrule appellants' fifth issue.

## CONCLUSION

Under section 38.001 of the civil practice and remedies code, a trial court may not award attorney's fees against an LLC. Thus, the trial court erred in awarding attorney's fees, and we reverse the trial court's judgment as to attorney's fees and render judgment that appellees recover no attorney's fees. Having overruled all of appellants' remaining issues, we affirm the remainder of the trial court's judgment.


/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

191506F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BENGE GENERAL
CONTRACTING, LLC AND
JAMES BENGE, Appellants

No. 05-19-01506-CV          V.

HERTZ ELECTRIC, LLC AND HTJ
GLOBAL ELECTRIC, LLC,
Appellees

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-16-03630.
Opinion delivered by Justice Partida-
Kipness. Chief Justice Burns and
Justice Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding attorney's fees to Appellees and **RENDER** judgment that Appellees take no attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered September 7, 2021.